## WETTENGEL v. CITY OF DENVER.

1. ORDINANCES.

When the power to pass an ordinance is not expressly conferred, but is derived, if it exists at all, from the "general welfare" clause, the reasonableness of the ordinance is a matter for judicial determination.

2. SAME.

The ordinance of the city of Denver prohibiting the distribution of handbills, etc., naturally tending to litter the streets and frighten horses, etc., is reasonable.

3. ORAL INSTRUCTIONS.

It is error to instruct the jury orally over the defendant's objection.

4. PRACTICE—QUESTIONS OF LAW AND FACT.

In a prosecution for violating an ordinance prohibiting the distribution of handbills, etc., naturally tending to litter the streets and frighten horses, etc., the jury must determine as a matter of fact, and not the court as a matter of law, whether the papers distributed came within the prohibition.

*Error to the County Court of Arapahoe County.*

THE plaintiff in error was found guilty in the police court of the city of Denver of the violation of an ordinance of said

city which prohibited the distributing of handbills and circulars upon the streets. He appealed to the county court of Arapahoe county, and upon trial there, before the court and a jury, was also found guilty and sentenced to pay a fine of three dollars and costs of the prosecution. From that judgment he brings the case to this court upon writ of error.

Section 2 of the ordinance upon which this prosecution was based is as follows:

"No person shall hand to or offer to any traveler or other person traveling along or upon any street, alley, lane, public place or enclosed public grounds in the city of Denver, any handbill, paper, advertisement, circular or other thing of such nature or character that the traveler, person or persons taking the same will naturally or probably throw or deposit the same immediately after so taking the same upon or litter or obstruct any street, alley, lane, public place or enclosed public grounds in said city, or where the same may be or may become calculated to frighten or injure or endanger horses or other animals, *provided* that this ordinance shall not be construed to interfere with or restrain the selling or distributing of newspapers or periodicals, but such sales may be carried on as now permitted and regulated by law."

Section 3 of the ordinance provides the penalty for the violation of the same, which is a fine of not less than three nor more than one hundred dollars for each offense.

The provisions of the city charter which, it is claimed, give to the council power to pass this ordinance are sec. 20, subdivision 40 of the city charter, on page 85, Session Laws, 1885, which, in substance, gives the council power to prevent "any practice having a tendency to annoy persons passing on the streets or sidewalks, or to frighten teams or horses;" and what is commonly known as the general welfare clause, which gives the city council power "to make all ordinances which it may deem necessary or requisite for the good order, health, good government, and general welfare of the city."

Mr. J. WARNER MILLS, for plaintiff in error.

Mr. F. A. WILLIAMS and Mr. A. B. SEAMAN, for plaintiff in error.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

There are a number of errors assigned, the principal one of which is the invalidity of the ordinance. There are, however, two other questions which will be considered, the determination of which will work a reversal of this judgment; but inasmuch as there are a number of cases pending in the court below which depend upon the decision in this, we have concluded to determine the main point involved and pass upon the constitutionality of the ordinance.

The evidence tends to show that on the night of August 6, 1890, on Larimer street, in the city of Denver, between 18th and 19th streets, the defendant, with others, distributed to travelers on the street, whom he could induce to take the same, 600 or 700 circulars or handbills about 7 by 10 inches in size, which gave the names of the six o'clock and Sunday closing houses in Denver dealing in ready-made clothing and boots and shoes, and urged the public to patronize them.

At the same time, the receivers of these circulars were requested not to drop them on the streets, and some of those to whom such requests were made complied therewith, but others dropped them on the street. The circulators endeavored to pick up such as were thrown away, but notwithstanding this, some of these circulars were deposited on the street, and found there and on the sidewalks the following morning.

The validity of this ordinance is assailed on the ground that it is unreasonable. It is contended that it is an "attempt to regulate and restrain the conduct of the citizen in matters of mere indifference, without any good end in view;" that it aims to prohibit the carrying on of a business which, in general, and in itself, is lawful.

The legislature not having conferred upon the city the express authority to pass an ordinance prohibiting the distributing of circulars on the streets, the power, if it exist at

all, must be derived from the "general welfare" clause and the power given to prevent "practices having a tendency to frighten teams or horses." The reasonableness of this ordinance, therefore, is a matter for judicial determination. No useful purpose would be subserved by following counsel for plaintiff in error in his discussion of the competitive wage system, of the conflicting views of speculative philosophers on sociology, or of the rights of employers and employees, all of which is not germane to the present discussion. The right of clerks to combine to secure, by all lawful means, shorter hours or higher wages, is unquestioned, and needs no argument to support it. Our hearty concurrence in all that is said by counsel in this part of the argument would not lead us to a decision of the propositions which are necessarily involved in the determination of this case. We proceed at once to a discussion of the main point, viz., the validity of the ordinance.

If the object of this ordinance is to prohibit the distributing to travelers on the street of any circular or handbill, irrespective of its character, it might be held unreasonable, and come within the principle announced in the case of *The People v. Armstrong*, 73 Mich. 288. The section of the ordinance held unconstitutional in that case is in substance as follows:

"No person shall himself, or by another, circulate, distribute or give away circulars, handbills or advertising cards of any description in or upon any of the public streets and alleys of said city."

As the court in that case said: "The offense is made complete in itself by the mere act of distributing or giving away these enumerated articles." For that reason, among others, the ordinance was declared invalid. In the ordinance before this court such are not its provisions, but the prohibition applies only to the distributing of handbills or circulars of such a character or nature that the traveler will naturally or probably throw the same immediately after so taking them upon or litter the street, or place the same where they may

be or may become calculated to frighten or injure or endanger horses. So that, by the very terms of the ordinance, the offense is made to consist not in the mere act of distributing handbills or circulars, but in the distributing of such handbills or circulars as will probably or naturally be thrown away and result in the littering of the street or frightening of horses.

In *Frazee's Case*, 63 Mich. 396, commonly known as the *Salvation Army Case*, it was held that an ordinance which prohibited all persons from parading or riding in the streets of Grand Rapids with musical instruments, etc., without having first obtained the consent of the mayor, was void, because it sought to "suppress what in general is perfectly lawful, and leaves the power of permitting or restraining processions to an unregulated official discretion."

These cases can, we think, be distinguished in principle from the one now before us. In the distributing of circulars or handbills which are, in themselves, unobjectionable, or in the parading of the streets with musical instruments, there is nothing unlawful, and an absolute prohibition of the same might be beyond the power of the city council to enforce; but the safety of the people who use the streets and sidewalks does require some restraint upon indiscriminate distributing of handbills and circulars of such a nature as have a tendency to frighten horses, or which will litter the streets. It is a matter of common knowledge that nothing is more likely to frighten horses than pieces of paper carried by the wind through the streets around and about the places where such horses may be. Any practice which naturally tends to cause the littering of the street with loose papers, which, flying about, will cause fright to horses, and so tend to the injury of the public, is not a lawful practice, and the enforcement of this ordinance will discourage and put a stop thereto. In another view of the case, this ordinance is reasonable. The throwing of loose handbills and circulars into the street is certainly reprehensible, and is a matter for police regulation. If one, therefore, hands to another a handbill which the latter naturally will at once throw into the street, the

former is a party to the prohibited act. The one who distributes the circular to the one who actually drops it in the street, to the injury of the public, is just as guilty as he who directly drops the paper. Indirectly, he contributes to the wrong, and should be held liable the same as if he himself threw into the street the objectionable article.

The evident object of the ordinance in question is to prevent the littering of the street and the frightening of horses. It certainly tends to the accomplishment of one of the pur poses for which the city was incorporated, viz., the protection of its inhabitants from danger as they pass along its streets, engaged in their business. Such an object is certainly legitimate, and the means employed are reasonable and surrounded by sufficient safeguards. The ordinance is free from the objections which seem to prevail with the supreme court of Michigan in the cases cited. With the construction which we have put upon the section under consideration, "the actual operation of the ordinance in all cases which may be brought thereunder" cannot result in the injustice which is urged as likely to follow its enforcement. We hold the ordinance valid, as a reasonable exercise of the police power of the city delegated to it by the legislature.

There are, however, errors apparent in the record which compel a reversal of this case. Over the objection of defendant's counsel, the court orally instructed the jury. This is error. *Lee v. Stahl*, 9 Colo. 208; Code of 1887, sec. 187, subdivision 6.

Defendant had the right, so far as this ordinance is concerned, to distribute any circulars that were not of the objectionable character enumerated. The evidence, either of the plaintiff or defendant, should show that the circulars or handbills distributed by the defendant came within the enumeration of those whose distribution the ordinance prohibited. Whether or not they were of such character was a question of fact for the jury, not a matter of law for the court. The jury must determine the questions of fact;—not only that the defendant distributed circulars, as charged in the com-

plaint, but also that these circulars were of the character specified as coming within the provisions of the ordinance. In the charge to the jury the court below eliminated the latter proposition, and in effect directed the jury to find the defendant guilty if they believed from the evidence that the defendant, with others, merely distributed the circulars or handbills which were offered in evidence. It is apparent that the court, as a matter of law, determined that the circulars which were distributed came within the prohibition of the ordinance, and in so doing it usurped the province of the jury.

For these two errors committed by the court below, the judgment should be reversed and the cause remanded for a new trial.

*Reversed.*