REX SWEAT, Sheriff, v. TURPENTINE & ROSIN FACTORS, INC.

150 So. 617.
Division B.
Opinion Filed October 20, 1933.

*Cary D. Landis,* Attorney General, *H. E. Carter,* Assistant Attorney General, and *Robert J. Pleus,* Assistant Attorney General, for Appellant;

*Stanton Walker,* for Appellee.

BUFORD, J.—Suit was instituted in the Circuit Court of Duval County to enjoin the Sheriff from enforcing the provisions of House Bill No. 1451, Chapter 16080, Acts of the Legislature, Regular Session, 1933. Injunction was granted and from that order appeal was entered to this Court.

Sections 1, 2 and 3 of the statute are as follows:

"1. That it shall be unlawful for any motor vehicle operating in the State of Florida to carry an auxiliary tank containing gasoline for the use of said vehicles while in operation in this State.

"2. Any motor vehicle operating in this State shall be equipped with one gasoline tank attached to said vehicle, and it is hereby declared to be unlawful for any of the above named motor vehicles so operated in this State to carry an auxiliary tank of gasoline, or other motor fuel for the use of said motor vehicle.

"2-a. The provisions of this Act shall not apply to or affect trucks or other carriers operated by the State or any County or municipality thereof.

"3. Any person operating any motor vehicle described in Sections 1 and 2 of this Act in violation of the provisions thereof may be arrested with or without warrant, and shall be deemed to be guilty of a misdemeanor, and upon conviction shall be punished by imprisonment for not more than thirty days, or by fine not more than Fifty ($50.00) Dollars, or by both such fine and imprisonment.'

The contention upheld by the lower court was, the Act was invalid because it violates the provisions of the Fourteenth Amendment to the Federal Constitution and violates Sections One and Twelve of the Bill of Rights of the State Constitution.

It is contended that the Act is valid as an exercise of the State police power.

It is well settled that the exercise of police power is confined to those Acts which may reasonably be construed as being expedient at least for the protection of public safety, public welfare, public morals or public health. Certainly it cannot be construed that there is anything in the Act which may contribute to the benefit of public morals or public health and we are entirely unable to find anything in the Act which indicates that it is warranted as a measure for the benefit of public safety or public welfare.

If it was intended as an Act to protect public safety upon the hypothesis that gasoline is a dangerous commodity and that hauling it on the highway is hazardous to the public it must also be admitted that the Act is discriminatory because it purports only to prohibit the hauling of gasoline in an auxiliary tank which gasoline is to be used for fuel for the motor vehicle in which it is being hauled on the public highways. The same tank of gasoline may under the law be hauled in the same vehicle over the same highway to be used for fuel in any other motor vehicle or for any other purpose and the mere fact that it is being hauled for the purpose of being used as fuel in that particular vehicle in which it is being hauled adds nothing to its dangerous character nor does it add anything to the hazard incident to its being hauled on the highway. It may also be said that if it is hazardous for the individual to use an auxiliary tank to convey gasoline in a motor vehicle to be used in that motor vehicle it is equally as hazardous for the agents and employees of the State, County and Municipal Governments to transport gasoline in the same manner for the same purpose.

The gravamen of the offense under the statute is not

that gasoline is hauled in a vehicle on the highway, but that the gasoline is to be used for fuel in the vehicle in which it is hauled, and certainly the gasoline so hauled is no more hazardous when it is to be used as fuel than it would be if it had been put into the service tank of the motor vehicle at a filling station or in a private garage. Nor would it be any more hazardous in being used for fuel in the motor vehicle in which it was hauled than it would be if used in some other motor vehicle on the same highway at the same time.

Perhaps we have said more than is necessary about this phase of the Act, but we have made these observations to emphasize the utter absurdity of it as a police regulation.

It was contended at the bar of this Court that the Act might be sustained as a proper legislative enactment as a means to prevent gasoline upon which the State tax had not been paid being brought into the State for use in the motor vehicle on State highways. It is entirely within the province of the Legislature to require gasoline so brought into the State to be subjected to the payment of the State excise tax, but we fail to see how prohibiting the gasoline being so brought into the State will in any manner accomplish such purpose. It may be that if the Legislature had prohibited the use of auxiliary tanks of a capacity above a reasonable amount which might be required for a journey within the State, such Act could be upheld upon the theory that it is intended to prevent what is known as "Boot-leg" gasoline being brought into the State for sale and without paying the tax. But this Act could have no such application.

Much has been said here about whether or not we could reconcile the provisions of the Chapter here under consideration with the provisions of Chapter 16081, which was House Bill No. 2, Acts of the Legislature of 1933. It is

unnecessary for us to consider this question because the Act under consideration must be held invalid, regardless of the existence or non-existence of the other statute.

For the reasons stated, the order appealed from is affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BROWN, J. J., concur.