H. (HORACE) PRIOR v. J. B. WHITE, Chief of Police of the City of New Smyrna Beach, Volusia County.

180 So. 347.
Division B.
Opinion Filed April 6, 1938.

2

Green & West and Alfred A. Green, for Petitioner;
Hull, Landis & Whitehair and Francis P. Whitehair, for Respondent.

BROWN, J.—This case involves the validity of a city ordinance which makes it a punishable offense for a person soliciting orders for the sale of merchandise to be "in or upon" a private residence in the city, when not requested or invited so to do by the owner or occupant.

H. (Horace) Prior was arrested and convicted in the municipal court of the City of New Smyrna Beach, Florida, on a charge of having violated a municipal ordinance of said City providing as follows:

"Section 1. The practice of being in and upon private residences in the City of New Smyrna, Florida, by solici-

tors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares, and merchandise and/or for the purpose of and/or peddling or hawking the same, is hereby declared a nuisance and punishable as such nuisance as a misdemeanor."

Another section provides that a violation of the ordinance shall be punished by fine or imprisonment.

Prior refused to pay the fine imposed on him by the municipal judge and upon being confined in the municipal bastile he filed a petition for writ of habeas corpus in this Court, and the writ was granted by one of the Justices of the Court. The respondent chief of police filed a return, and the case is now before us, after oral argument, and filing of briefs. The main questions affect the sufficiency of the respondent's return to the writ, which return seeks to justify the holding in custody of the petitioner upon the ground that the petitioner had been duly convicted of the violation of a valid ordinance. The petitioner contends that the ordinance is unconstitutional and void, at least in so far as it applies to "solicitors." The return attaches thereto and makes a part thereof the affidavit and warrant upon which the petitioner was tried, together with a stenographic report of the testimony.

The affidavit upon which the warrant was issued states that petitioner had violated the ordinance in question in that he did go uninvited upon the private premises of affiant, viz., the home of affiant within said city, and did then and there solicit an order from the occupant of said home for the sale of merchandise of Fuller Brush Company. Motion to quash the affidavit on account of the invalidity of the ordinance was overruled.

In the prosecution, the City introduced in evidence a copy of the ordinance, and the testimony of Myrtle M. Woodward, upon whose affidavit the warrant was issued. Miss Woodward's statement is, in effect, that on August 9, 1937, petitioner appeared at the door on the porch at her home at 202 South Orange Street, in the City of New Smyrna Beach, without invitation from her to come upon her premises or to call at her home for any purpose whatsoever, and stated he was a salesman of the Fuller Brush Company, selling brooms, brushes and similar articles from house to house. After soliciting an order from her, petitioner showed her various articles he had for sale, quoted the price of such articles, and she chose to purchase two of the articles for which petitioner solicited an order and she agreed to purchase these articles from petitioner as an authorized dealer of Fuller Brush Company.

At the conclusion of this evidence, the City announced it had no further evidence to offer and rested its case.

Thereupon, a motion was made on petitioner's behalf to discharge the defendant, which motion was denied.

In his behalf, petitioner testified in substance, that he was fifty-three years of age and was living with his wife in New Smyrna Beach on August 9, 1937, when he called at Miss Woodward's home to solicit an order for Fuller Brush Company. He said he went to Miss Woodward's home on August 9, 1937, knocked on the door and told her, when she came to the door, that he was a Fuller Brush man and had a gift brush he wanted to give her. She came out on the porch, didn't say anything, accepted the brush, and thanked him for it. He gave her one of his folders showing the special article Fuller Brush Company had out for the month and said she was interested in a broom. He showed her the broom and she took it and went into the house and showed it to her maid. When she came back,

she said she would take the broom and a white palm brush. Those brushes were displayed by petitioner from a sample case containing products of the Fuller Brush Company, which he had with him at the time. Miss Woodward paid nothing on account of the brush at the time and delivery thereof was not made. Petitioner gave her a duplicate slip of the order and sent the original by mail to the office of the Fuller Brush Company at Atlanta, Georgia, from which he subsequently received the order by truck from Atlanta. On August 16th petitioner delivered to Miss Woodward the broom and the brush and received payment for them. When petitioner called at Miss Woodward's home to solicit the order, he had been with the Fuller Brush Company for some time, and, prior to his obtaining the appointment had been thoroughly investigated by Fuller Brush Company as to his character, and moral fitness for the job of soliciting, and had been trained by Fuller Brush Company for the job of soliciting and had been trained by Fuller Brush Company so as to know and observe a courteous and gentlemanly manner in soliciting at private homes. When petitioner called at Miss Woodward's home, there was no sign or anything in the yard or on the premises that indicated to him that salesmen or solicitors were not welcome and Miss Woodward did not tell him he was not welcome or wanted or that she was annoyed by his presence there; in fact, from the reception he received, petitioner felt that he was welcome. Prior to the time petitioner was arrested, he had called at approximately one hundred homes of white people in the City of New Smyrna Beach and solicited sales for the Fuller Brush Company and had heard or seen nothing that indicated to him that he was not welcome at these homes or that indicated to him that anyone in any one of these homes was annoyed, disturbed, upset, inconvenienced or bothered in any way by his calls. No products of Fuller

Brush Company are stored in the State of Florida for sale and all orders taken by petitioner were sent by mail to Atlanta and the products ordered were shipped from Atlanta to him by express, mail or truck, for delivery in the City of New Smyrna Beach.

R. S. Hockett, a witness on behalf of petitioner, testified that he had been a dealer in Fuller Brushes for three years and that the City of New Smyrna had been in his territory from May, 1936, until February, 1937. During that period of time, Hockett had called upon more than five hundred homes of white people in New Smyrna Beach at least twice a year, and sometimes three times a year, and during that time had never seen or heard anything that indicated to him that he was not welcome as a salesman at any of those homes and had not heard or seen anything that indicated to him that his presence in any of those homes, while soliciting sales for Fuller Brush Company, was annoying or disturbing or a nuisance in any way or affected the health and peace and quiet of anyone in the homes. On the premises of none of these homes, or in the yard or on the buildings, did he ever observe anything, written, signed or otherwise, stating that salesmen or solicitors generally were not admitted or not desired upon the premises. Not one of these home owners on which he called, for solicitation purposes, ever made a complaint to him against his calls or asked him not to call at their homes. Hockett stated it to be his opinion, based upon his experience, that in the sale of products of Fuller Brush Company solicitation at the homes was all important in that the products cannot be properly demonstrated in the store, because it is to be used in the home and must be demonstrated there. Hockett stated he had received the same training by Fuller Brush Company as to the courteous manner to be followed by their salesmen in soliciting sales at private homes that petitioner had received

and said that all Fuller Brush salesmen were trained to enter a home to be solicited in the same way that a salesman would want anyone else to enter his home and approach his wife, to sell their merchandise.

Both petitioner and Hockett testified they earn their living solely from the sale of the products of Fuller Brush Company. F. J. Havel, branch manager of Fuller Brush Company at Miami, testified that he had supervision over the southeastern half of the State of Florida, including the City of New Smyrna Beach. He substantiated, and amplified, the statements of petitioner and Hockett as to the investigations that were made by Fuller Brush Company of the character, reputation and moral fitness of persons before they are appointed to sell the products of Fuller Brush Company and the training, generally, that is given to these men after they are employed. He said he had never received from New Smyrna Beach, during the seven years he had been in charge of that territory, any complaint about the conduct of any Fuller Brush dealer in making and soliciting sales for the Fuller Brush Company in that city. Also, he said that from his experience in selling Fuller Brushes and other products, it was his opinion that home or house solicitations are one hundred per cent. important and necessary to the sale of that product.

G. S. Hough testified he was distributor for the Magic Electric Sweeper in that part of Florida in which the City of New Smyrna Beach is located. He said he had sold Fuller Brushes for eight years and had sold other household commodities for a number of years. Based upon his experience, it was his opinion that house to house solicitation by salesmen of household appliances and commodities, such as vacuum cleaners, was one hundred per cent. necessary to demonstrate the machine and to show the housewife the need of the machine. Over a given period of

time, he said, four store dealers of his product sold twenty-nine machines while an average salesman soliciting at homes, sold one hundred and eight machines. By increasing the volume of sales, the price to the consumer is reduced.

T. A. Stevens testified on behalf of petitioner that he was branch manager of Realsilk Hosiery Mills with the City of New Smyrna Beach in his territory. He said he had sold products of his company, hosiery, etc., by house to house solicitation in the City of New Smyrna for almost four years prior to the trial and had called at approximately foui hundred fifty-five homes about five times a year for that purpose. In making these house to house solicitations, no one had said anything to him or done anything in his presence that indicated to him that he was not welcome at the home for that purpose or to indicate to him that his presence was annoying or irritating, or a nuisance, or injurious to the health or privacy of anyone in the home. It was his opinion that 98.7% of the manufactured products of his company were sold by house to house solicitation. In 1936 his company did a gross business of $21,000,000.00. By selling directly to the consumer in this manner, a considerable saving to the consumer results.

J. N. Crevasse testified on behalf of the petitioner that he was branch manager of the General Electric Supply Corporation, with headquarters in Jacksonville. General Electric is a national concern which manufactures refrigerators, vacuum cleaners, fans, etc. The City of New Smyrna Beach is in his territory. From observation and experience, it is his opinion that from 75% to 80% of the sales of these household appliances which General Electric manufactures are direct results from house to house solicitation; that if house solicitation is stopped, the volume of sales and production will be decreased and the price of products will be raised.

George L. Glasgow testified on behalf of petitioner that he was District Manager of the Hoover Company, manufacturers of Hoover vacuum cleaners, with headquarters in Jacksonville. He had been with the Hoover Company for twenty-one years in various departments and had been in charge of sales in the State of Florida for a number of years. From the books of his company and from his experience, 99% of the sales of his company in Florida during the past three years was the direct result of house to house solicitation. In explaining the importance of house to house solicitation for the sales of household commodities and appliances, Mr. Glasgow said this: "When a person buys a Hoover Electric Cleaner, they buy it to clean their rugs and furnishings. The only way they know whether it will clean their rugs and furnishings is to try it on their rugs and furnishings. They cannot and do not bring their rugs and furnishings to the store to be cleaned, therefore, the cleaner is taken to the home, to demonstrate and to show, and for free trial, to show that it will do what we claim it will do. Therefore it is absolutely essential that it be taken to the home."

Mrs. W. C. Chowning testified on behalf of petitioner that she had lived in the City of New Smyrna Beach for twenty-eight years. That for the past eleven years in the City of New Smyrna Beach she had sold products of the Spencer Corset Company by house to house solicitation. During that period of time, she had seen nothing or heard nothing in any home at which she called in the City of New Smyrna Beach which indicated to her that she was unwelcome or that her presence in the home was annoying to the people in the home or did anything that would affect their health or comfort or convenience. She said that the products she sold included braces and supports recommended by doctors and that it was highly important that sales so-

licitations be made at the home where the patient could be measured and fitted for the article purchased.

E. W. Mason testified on behalf of petitioner that he was manager of the southeastern division of the Fuller Brush Company and his territory included the twelve southeastern states. He corroborated petitioner's statement as to the sending of orders to Atlanta from New Smyrna for goods and the shipment from Atlanta to New Smyrna of these goods of the Fuller Brush Company. He said that he has been in the employ of Fuller Brush Company since March, 1921, and has had an opportunity to observe the result of the sales methods employed by Fuller Brush Company. Between 1921 and 1936, Fuller Brush Company put into operation sixty or seventy retail stores to assist in marketing their products and these stores remained in operation for two and one-half years. None of them were successful and none of them are now in operation. Sale of the products by house to house solicitation is all important. In August, 1937, there were approximately seventy-five Fuller Brush dealers in the State of Florida who made their living by house to house solicitation.

The City offered no testimony in rebuttal.

It appears that the ordinance here under consideration was copied almost *verbatim* from an ordinance of the Town of Green River, Wyoming. The Green River ordinance was first attacked in the Federal District Court of Wyoming, 60 Fed. (2) 613, and the District Judge held the ordinance unconstitutional, stating:

"Considering the set-up of this case in the light of the authorities above quoted, I am unable to bring myself to the conclusion that there has been other than an unwarranted and arbitrary purported exercise of the police power in the violation of plaintiff's rights under the provisions of the Fourteenth Amendment to the Federal Constitution.

The basis of such an ordinance, as we have seen, must be the preservation and protection of the health, safety, morals, or welfare of the community. First, the plaintiff's business is an ordinary, usual, and legitimate one, which gives no offense to any recognized standards. Next, the calling at a private residence of a person upon any legitimate mission has generally been recognized as permissible. The ordinance in fact reflects upon its face that the transaction which it seeks to restrain is not a nuisance *per se,* because it only restrains persons from calling at such residences when not *invited* or *requested* by the occupant. If it were a true nuisance, then to have persons call at private residences for the purpose of taking orders for merchandise could not be permitted by even those who requested or invited it. If it is sought to be sustained upon the ground that the disturbance of the occupant of the house is the basis of the relief sought, it is not all comprehensive, because the occupant might still be subjected to other types of solicitation, including those soliciting alms. The matter of who comes to one's house is largely one to be regulated by the occupant and not by the city fathers, although the latter may have jurisdiction to define and determine the use of the streets, alleys, parks, and public places under their control."

The case was appealed to the Circuit Court of Appeals, Tenth Circuit, and the District Judge was reversed (See Town of Green River v. Fuller Brush Company, 65 F. (2d) 112, 88 A. L. R. 177), and the constitutionality of the ordinance upheld. The Court said:

"It will be observed that the prohibitions and penalties named in the ordinance are directed against solicitors, peddlers, hawkers, itinerant merchants, and transient vendors of merchandise. Those named, except solicitors, have long been recognized as subject to regulation under the police power. Indeed, the power extends to the prohibition of

such practices under penalty. Emert v. Missouri, 156 U. S. 296, 15 S. Ct. 367, 39 L. Ed. 430; Commonwealth v. Gardner, 133 Pa. 284, 19 A. 550, 7. L. R. A. 666, 19 Am. St. Rep. 645; Commonwealth v. Dunham, 191 Pa. 73, 43 A. 84; Williams v. Arkansas, 217 U. S. 79 79, 30 S. Ct. 493. 18 Ann. Cases 865. But the ordinance here under consideration did not attempt to prohibit any of the parties named from selling their wares, either of goods carried with them or on samples for future delivery. It denounces a particular practice of such vendors or their agents. We must assume that the practice existed in the town as the first section states, and that it was becoming annoying and disturbing and objectionable to at least some of the citizens. We think like practices have become so general and common as to be of judicial knowledge, and that the frequent ringing of doorbells of private residences by itinerant vendors and solicitors is in fact a nuisance to the occupants of homes. It is not appellee and its solicitors and their methods alone that must be considered in determining the reasonableness of the ordinance, but many others as well who seek in the same way to dispose of their wares. One follows another until the ringing doorbells disturb the quietude of the home and become a constant annoyance. Another practice of the same sort has arisen within recent years of throwing advertisements at the entrance of homes. Men are employed for that purpose. Whole residence sections of cities and towns are at times flooded in this way to the annoyance of its citizens. Wettengel v. Denver, 20 Colo. 552, 39 P. 343. See also San Francisco Shopping News Co. v. City of South San Francisco, *et al.*, 69 F. (2d) 879. We think no distinction materially affecting the inquiry between solicitors and the others named in the ordinance can be found when its purpose and the annoyance which it was intended to prevent are borne in mind. We

must therefore disagree with the learned District Judge in his conclusion that the ordinance was arbitrary and unreasonable."

The Supreme Court of Wyoming had the ordinance before it in the case of Town of Green River v. Bunger, 58 Pac. (2d) 456, and that Court also unheld the constitutionality of the ordinance.

A somewhat different position was apparently taken in Real Silk Hosiery Co. v. Richmond (1924: D. C.) 298 Fed. 126, in which a district judge, in granting an injunction *pendente lite,* directed against the enforcement against non-resident solicitors of an ordinance imposing penalties upon peddlers and solicitors who ring or knock at doors of dwelling places bearing a sign, "No peddlers," said: "The ordinance aims at prevention of trespass, annoyance, conflict, disorder and breach of the peace, otherwise of reasonable apprehension. In principle it is a legitimate exercise of local self-government or police power, in no wise encroaching upon interstate commerce; for the latter does not license the offensive conduct by the ordinance denounced, nor confer immunity against consequent punishment. But though the ordinance, even as the householder's sign, recognizes the legal and proper distinction between peddlers and solicitors or agents, it undertakes to extend its ban beyond the householders. It would visit the consequence of trespass upon solicitors guiltless of any offending. A householder's ban upon peddlers is none to solicitors, and so the latter may there lawfully enter and solicit contracts, though the former are excluded from trade. *Where the householder permits solicitors, the city cannot forbid.* Hence application of the ordinance to plaintiff's solicitors is unwarranted interference with interstate commerce, and deprivation of liberty of contract and of property without due process of law." (Italics ours.)

The City of Bel Air, Maryland, passed a similar ordinance, but the third section of the ordinance provided that it should "not apply to persons employed by or representing any established merchant, business firm or corporation located and regularly doing business in the Town of Bel Air or to farmers residing in Harford County selling any food item raised of produced by themselves, or to anyone duly licensed." The Court of Appeals of Maryland, in the case of Jewel Tea Company v. Town of Bel Air, *et al.,* 192 Atl. Rep. 417, held the ordinance void because "it is not pretended that it was passed pursuant to any special authority from the Legislature, nor can it be implied from any of its charter powers," and also because Section Three of that ordinance discriminated against non-resident in favor of resident business and thus violated the Fourteenth Amendment to the Federal Constitution. In the opinion in that case it was said:

"We fail to see how the solicitation or conduct of a legitimate mercantile business or trade can be resolved into a health, safety, or general welfare regulation by suppression by a town ordinance. It requires no discussion to convince one that the Ordinance No. 74, regulating or forbidding the business of the plaintiff, has no relation to public health, safety, or the general welfare of the community. Spann v. Gaither, 152 Md. 1, 136 A. 41, 50 A. L. R. 620."

The only other case which we have found dealing with an ordinance of this nature is a case decided by the Supreme Court of South Carolina in 1936, entitled City of Orangeburg v. Farmer, reported in 186 S. E. 783. The ordinance dealt with in that case was identical with the one now before us. The South Carolina court held the ordinance void, and had this to say in the opinion:

"We shall, therefore, attempt to apply the test of reasonableness to the ordinance in question. The ordinance de-

clares that the mere soliciting of the sale of merchandise in and upon private residences is a nuisance, and levies a penalty upon such facts shown. The penalty is not based upon the conduct of the salesman, nor is the same based upon any valid shown reason of protecting the public health, nor is any other fact required save and except an act which in itself is legitimate. The appellant offered considerable testimony to the effect that such solicitation is not a nuisance. He showed that the salesmen were almost without exception courteous and well-mannered; that numbers of persons desired this method of sale; that it was not a menace to the public health; that large numbers of persons over the United States made a livelihood in this fashion; that it was highly impracticable to sell certain useful articles by any other method; and that on the whole there was no logical or valid reason for the ordinance in question. The ordinance was passed by the city council of Orangeburg at the request of the Retail Merchants Association of that city, and not by reason of the complaint of householders. In fact, the matter of the passage and enforcement of the ordinance does not appear to have been of import to the citizens generally of respondent and when appellant was arrested it was not upon the complaint of any citizen so far as the record discloses. The occupation of soliciting orders from house to house is a lawful one when conducted in a proper manner. The ordinance does not attempt to differentiate between salesmen who conduct themselves properly and those who do not. The ordinance does not require a license, evidence of good character, a medical inspection of salesmen, or other safeguards which might protect the people, but simply and boldly declares a lawful occupation a nuisance. Measured by the standards laid down in this Court, the ordinance is unreasonable, unconstitutional on this ground, and void. There is a further grave question

as to whether the ordinance does not interfere with inter-
state commerce, especially under the facts of the particular
case being decided, but there is no necessity under our view
to consider this question."

The City of New Smyrna Beach (formerly New Smyrna)
derives its powers from Chapter 10941, Laws of Florida,
Acts of 1925, which provides in Section 7, among other
things, that the City shall have the power:

"To pass and enforce ordinances for the preservation of
the property of said city and to preserve order on the same;
* * * to abate nuisances therein; to adopt and enforce local
police, sanitary and other regulations not in conflict with
the laws of the State of Florida; to provide for the enforce-
ment of the ordinances and regulations of said city by the
imposing of fines and penalties. * * * The enumeration of
particular powers herein shall not be held or deemed to be
exclusive, but, in addition to the powers enumerated herein
or implied hereby the City shall have and may exercise all
other powers which under the Constitution and Laws of
Florida it would be competent for this paragraph specifi-
cally to enumerate."

It is contended by the respondent that the general "police
powers conferred upon the municipality by the Legislature
are sufficient to justify the passage of such an ordinance.

Petitioner, on the other hand, contends that the ordi-
nance, at least in so far as it applies to solicitors, is not a
justifiable exercise of the police powers of the City, but
is an unreasonable, oppressive and arbitrary invasion of his
personal liberty to pursue a legitimate and harmless busi-
ness activity and means of making a living, contrary to the
constitutional guarantees contained in Sections 1, 4 and 12
of the Bill of Rights contained in our State Constitution,
and is therefore unconstitutional and void.

While fully recognizing the difficulty of the question presented, which is illustrated by the conflicting decisions on the subject, we are, upon the facts of this case, inclined to follow the holding and most of the reasoning contained in the opinions hereinabove quoted from in the cases of Fuller Brush Company v. Green River, *supra,* which was decided by the United States District Court in Wyoming, and City of Orangeburg v. Farmer, *supra,* which was decided by the Supreme Court of South Carolina. It has been the trend of the decisions of this Court to give effect to the constitutional guarantees of personal liberty and private property when the common good did not fully justify or require their abridgement or curtailment to some extent by legislative measures, or to protect those rights fully and completely when they were of that inalienable and sacred character which the language of the Constitution protects from any invasion whatever, regardless of the temporary will of majorities or the supposed requirements of the general welfare. Indeed, our decisions recognize the fact that the principles embodied in our "Declaration of Rights" have their roots deep in the past and are the rich fruitage of centuries of bitter struggle by our forefathers against the exercise of arbitrary, oppressive and autocratic governmental power in all its forms.

In Dillon on Municipal Corporations, Fifth Edition, Section 591, it is said:

"When Ordinance will be deemed Unreasonable.—It is of course within the power of the court to declare an ordinance to be *unreasonable and void on its face* by a mere inspection of the ordinance, if it is clearly of that character because of the inherent nature of its provisions. But the power of the court to declare an ordinance void because it is unreasonable is one which must be carefully exercised. When the ordinance is within the grant of power conferred upon

the municipality, the *presumption is* that it is reasonable, unless its unreasonable character appears upon its face. But the courts will declare an ordinance to be void because unreasonable *upon a state of facts being shown* which makes it unreasonable. If the ordinance is not inherently unfair, unreasonable or oppressive, the person attacking it must assume *the burden of affirmatively* showing that as applied to him it is unreasonable, unfair, and oppressive. And an ordinance general in in its scope may be adjudged reasonable as applied to one state of facts and unreasonable when applied to circumstances of a different character."

The evidence which was introduced in this case, all of which is summarized earlier in this opinion, indicates that the soliciting of orders for the sale of goods at private homes in New Smyrna Beach was not a nuisance, either private or public. There was no evidence whatever that the acts of the petitioner or any other solicitor in calling at private homes for the purpose of soliciting orders for the sale of goods in the City of New Smyrna Beach constituted a nuisance. Indeed, it was made affirmatively to appear that sales by house to house solicitation had been carried on in said City without protest or objection for years prior to the passage of the ordinance. In fact, the prosecuting witness made no objection to solicitor's call, but on the contrary invited him in and purchased two articles from him. The evidence tends to show that a custom had been established in the City of New Smyrna Beach for solicitors to call at the homes of citizens and solicit the purchase of their goods and wares. Thus if there was any presumption in favor of the reasonableness of the ordinance, that presumption was rebutted by the evidence in this case. And it has been held that where the thing complained of is not *prima facie* a nuisance, the burden is on the prosecution to show that it was a nuisance in fact. 46 C. J. 820. But

even if the burden of affirmatively showing that this ordinance was unreasonable, unfair and oppressive, as applied to the petitioner's occupation, has been upon the petitioner in this case, the evidence shows that he carried that burden. In 2 Cooley on Torts (4th ed.) page 238, Section 248, it is said:

"Every retail dealer impliedly invites the public to enter his shop for the examination of his goods that they may purchase them if they see fit; the mechanic extends the like invitation to those who may have occasion to become his customers; the physician and the lawyer invite them to their respective offices, and so on * * *. No doubt one may visit another's place of business from no other motive than curiosity, without incurring liability, unless he is warned away by placard or otherwise. *So every man, by implication, invites others to come to his house as they may have proper occasion, either of business, of courtesy, for information, etc. Custom must determine in these cases what the limit is of the implied invitation."*

Unless the householder manifests externally in some way his wish to remain unmolested by the visits of solicitors, it would seem that the solicitor may take custom and usage as implying consent to call where such custom and usage exist. 31 Michigan Law Review, 543. Invitation may be implied from custom, usage or conduct. Lawrence v. Kaul Lumber Company, 55 So. 111, 171 Ala. 300. And it has been held that a license may be implied to enter the house of another, at usual and reasonable hours, and in a customary manner for any of the common purposes of life. Lakin v. Ames, 10 Cush. (Mass.) 198. See also Section 167 of Restatement of Torts.

"The power vested in municipal corporations should, as far as practicable, be exercised by ordinances general in

their nature and impartial in their operation." Dillon on Municipal Corporations, Section 593.

There may be some people in New Smyrna Beach who seriously object to having solicitors call at their homes for the purpose of selling articles of merchandise, but the evidence in this case indicates that the majority of the natives have no such objection. In 3 McQuillin on Municipal Corporations, Second Edition, page 122, it is said:

"Nuisance, nocumentum, or annoyance, signifies anything that works hurt, inconvenience or damage. A private nuisance is anything done to the hurt or annoyance of lands, tenements or hereditaments of another. A common or public nuisance affects the public. It is such an inconvenience or troublesome offense as annoys the whole community, in general, and not merely some particular person. A private nuisance is a private wrong done to an individaual and must be redressed by private action. Such wrongs fall under the head of *torts*. Common or public nuisances are denominated public wrongs, and are classified as crimes and misdemeanors, since the damage resulting therefrom is common on the whole community, in general, no one being able to assign his particular portion of it. Laws in substance define a nuisance to consist in unlawfully doing an act or in omitting to perform a duty which either annoys, injures or endangers the comfort, health, repose or safety of the citizen, or which unlawfully interferes with or tends to obstruct, or in any way render unsafe and insecure other persons in life or in the use of their property. Such commission or omission becomes a public nuisance when it affects an entire community or any considerable number of persons."

To like effect see Dillon on Municipal Corporations, Volume 2, 684 n.

Tested by this rule the act sought to be prohibited by the ordinance is manifestly not a public nuisance and therefore may not be punished as a crime or misdemeanor. It is an old common law principle that an indictment will lie only for a public nuisance, not for a private nuisance. See in this connection Pennsylvania Coal Company v. Mahon, 260 U. S. 393; 67 L. Ed. 322, and 46 C. J. 648; 2McQuillin, Section 677.

It thus appears that the act which the ordinance declared to be a public nuisance is in fact no nuisance at all, or is at most merely a private nuisance. In Section 596 of his work on Municipal Corporations, Judge Dillon said:

"An ordinance cannot legally be made which contravenes a common right, unless the power to do so be plainly conferred by a valid and competent legislative grant; and in cases relating to such a right, authority to regulate, conferred upon towns of limited powers, has been held not necessarily to include the power to prohibit."

It appears from the evidence in this case that the house to house solicitation of business, such as was engaged in by this petitioner, constitutes what has become an ordinary, usual and lawful method of doing business, and our conclusion is that a municipality cannot, by an attempted exercise of its general police powers, prohibit such method of doing business, except perhaps as to householders who have in some manner indicated that solicitation of business, or certain designated types of business, at their homes, is not allowed.

"A municipality cannot deprive a person of his property or property rights, by declaring by ordinance or otherwise that to be a nuisance which in fact is not a nuisance." S. H. Kress & Company v. Miami, 78 Fla. 101, 82 So. 775. See also Inglis v. Rymar, 111 Fla. 733, 152 So. 4, wherein it was said that:

"If a skating rink is not in fact a nuisance, a city ordinance cannot make it so."

Furthermore, if the solicitation of sales at private residences really constituted a public nuisance in fact, then such solicitation could not be permitted even by those who required or invited them. This was pointed out in one of the opinions hereinabove quoted from.

In the recent case of Perry Trading Company v. City of Tallahassee, 128 Fla. 424, 174 So. 854, Mr. Chief Justice ELLIS, speaking for this Court in an illuminating opinion, had this to say:

"In the case of Pounds v. Darling, 75 Fla. 125, 77 So. 666, we held that:

"'To be valid an ordinance must be reasonable and not in conflict with any controlling provision or principle of law * * * and if any doubt exists as to the extent of a power attempted to be exercised by a municipality out of the usual range, or which may affect the common law right of a citizen, it is to be resolved against the municipality.' Text 132. * * *

"The doctrine is applicable to that situation where a city, under the guise of exercising the police power, imposes such limitations and burdens on conducting a legitimate business as to seriously impair the right to conduct such business where there is no question of public health, morals or safety involved."

See also Sweat, Sheriff, v. Turpentine and Rosin Factors, 112 Fla. 428, 150 So. 617; 6 R. C. L. 239; Cooley Constitutional Limitations, 8th ed., Vol. 2, passage 1228.

In commenting on the Wyoming case, the Harvard Law Review, Volume 46, page 543, observed:

"The factual basis of legislation of this nature will vary with local conditions, but caution must always be exer-

cised lest the protection accorded take from the householder his valuable existing privilege to have those with lawful missions call upon him if he so desires."

It is contended with considerable force that this ordinance deprives the public of their right to purchase from home solicitors.

"The right to labor or earn one's livelihood in any legitimate field of industry or business is a right of property, and any unlawful or unreasonable interference with or abridgement of such right is an invasion thereof, and a restriction of liberty of the citizen as guaranteed by the Constitution."

Yee Gee v. City of San Francisco, 235 Fed. 757; Humes v. City of Little Rock, 138 Fed. 929; City of Chicago v. Shultz (Ill.) 173 N. E. 276.

The writer realizes that the foregoing opinion is what Mr. Justice CORDOZA criticizes as being "an oleaginous" or "paste-pot opinion," containing as it does so many long quotations from the opinions of other courts, but the writer thought it well, in view of the novelty and importance of the question in this State, and the mere handful of conflicting decisions which have been handed down in other jurisdictions dealing with the validity of an ordinance like the one here under review, to go into the matter at some length, in the hope that it would be of some assistance to my associates on this Court as well as to the bench and bar of the State.

For the reasons above pointed out, we hold that, as applied to this petition, and the act or practice of soliciting orders for the sale of goods, wares and merchandise, the ordinance is unreasonable and invades the petitioner's constitutional rights. Therefore, the prosecution and conviction of the petitioner in the municipal court, based on such

24

ordinance, must likewise fall, and the petitioner be released from the custody of the respondent.

It is so ordered.

WHITFIELD, P. J., and CHAPMAN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.