WASHINGTON (City), Plaintiff-Appellee, v. THOMPSON, Defendant-Appellant.

Common Pleas Court, Fayette County.

No. 20691.   Decided April 21, 1949.

600

Winston W. Hill, Washington C. H., for plaintiff-appellee.

Corry, Durfey, Martin & Browne, Springfield, Bush & Rankin, Washington C. H., for defendant-appellant.

## OPINION

By RANKIN, J.

This is an appeal on questions of law from the judgment of the police court of the city of Washington. In the court below the defendant, appellant herein, was tried and convicted upon an affidavit which charged that "on or about the 27th day of October, 1948, one Charles Thompson unlawfully did go in and upon a private residence property '* for the purpose of soliciting orders for goods, to-wit: photographs, not having first been invited by the owner thereof so to do.' "

This charge was preferred under ordinance No. 383, enacted April 13, 1938, which provides:

"That the practice of going in and upon private residences * * * by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same, is hereby declared to be a nuisance, and punishable as such nuisance as a misdemeanor."

The facts involved are not in dispute. It was stipulated "that the defendant, Charles Thompson, is, and at the time of his arrest was, employed by Olan Mills, Incorporated of Ohio, a Tennessee corporation with its prinipal place of business in Springfield, Ohio; that said corporation is engaged in the business of making, processing and selling portrait photographs, which business is carried on through the means of house-to-house solicitation of orders, and that the defendant, Charles Thompson, is employed as a salesman for said company, his duties requiring him to make house-to-house solicitation of orders for portrait photographs, in the performance of which duties the defendant * * * was engaged at the time of his arrest."

While the defendant sets forth four separate respects in which he claims the trial court erred in his prejudice, all of these are based upon the general proposition that the ordinance under which he was convicted is invalid. The question is therefore presented as to whether or not the city possessed the power to enact said ordinance.

Prior to the adoption of the Constitutional amendments of 1912 all police power possessed by municipalities was conferred upon them by the Legislature. They had no other source of such power. At that time many general laws were in force granting police powers to municipalities with respect to a wide variety of subjects. By a schedule adopted with said amendments it was provided that: "All laws then in force, not inconsistent therewith shall continue in force until amended or repealed." With regard to that subject it may be said that while a constitutional provision will repeal by implication prior to legislative enactments inconsistent therwith, such repeals are not favored. To effect "a repeal by implication, the inconsistency between the constitutional provision and the legislation, must be clear, strong, manifest, necessary, obvious, and incapable of fair reconciliation." 8 O. Jur. 175-6. Practically all of said general laws have been continued in full force down to the present time. Some amendments thereto have been made by the Legislature and additional laws of a similar nature have been added to the list. All of these laws have been grouped in the Code under the title "Municipal Corporations" under the heading "Enumeration of powers." Sec. 3615 et seq, GC.

Under the sub-heading "Health and Sanitation" municipalities are empowered to "abate nuisance and prevent injury" and under the sub-heading "Peace and Morals" they are empowered "to restrain or prohibit" certain activities; "to prevent" certain conduct; "to authorize destruction of instruments or devices used" for certain purposes; "to suppress and distrain" certain establishments; "to restrain and prohibit" the things detailed; and to punish those guilty of various acts of misconduct. Sec. 3646 et seq, GC.

Less drastic powers are grouped under the sub-heading "Licenses," wherein municipalities are empowered to license certain specified businesses, §3669 et seq, GC. Under the latter sub-heading the law deals specifically with the business of soliciting orders for goods, which is the subject matter of the ordinance under consideration herein. As a matter of fact that specific business is not mentioned or referred to, except in §3673 GC, which merely authorized municipal corporations "to license transient dealers * * * and each person who, on the streets, or **traveling from place to place about such municipality,** sells, bargains to sell, or **solicits orders for goods,** wares or merchandise by retail. The granting of such licenses shall be controlled by the provisions of the next preceding section."

The pertinent portion of "the next preceding section" provides that the municipality "'in granting such license, may exact and receive such sum of money as it may think reasonable, but no municipal corporation may require of the owner of any product of his own raising, or the manufacturer of any article manufactured by him, license to rend or

sell in any way, by himself or agent, any such article or product." Both of these statutes were enacted prior to 1912.

By the enactment of these sections the Legislature quite definitely intended merely to permit municipal corporations to license, not forbid, the businesses mentioned therein.

"Where a license * * * is imposed under the police power as a means of regulation, it must not be imposed on such terms and conditions as to operate as the virtual prohibition of a useful and legitimate occupation." 53 C. J. S., 511, **Youngstown v. Harrington, 17 Abs 154,** and cases cited.

"The right to follow any of the common occupations of life is one of the fundamental rights of citizenship. * * * Liberty, in its broadest sense, embraces the right of an individual to use his faculties in all lawful ways to live and to work where he will, to do business, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation." **8 O. Jur. 470.**

In the case of **Tea Co. v. Tippecanoe, 85 Oh St 120,** it was held:

"In view of the guaranties of the Bill of Rights, §3673 GC, cannot be so interpreted as to authorize a municipal council to impose a license fee upon merchants who do not sell upon the public streets or places, but only solicit orders and negotiate future sales at the residences of their customers."

In the opinion the court makes this important pronouncement: "The concession that the business of the plaintiff is within the terms of this section of the statutes will not aid the defendant (village), for if so interpreted, the statute (§3673 GC) very plainly transcends the limits prescribed by the constitution."

In 1915 the Honorable Edward C. Turner, then Attorney General and now Judge of the Supreme Court of Ohio, was asked to pass upon the "legality and constitutionality of an ordinance imposing a fee of $10.00 per day upon agents soliciting business in 'the city of Columbus, said agent going from door to door soliciting sales.'"

After citing the Tippecanoe case he stated: "In view of this decision it seems clear that an ordinance of the kind described by you would be void, regardless of the amount of the per diem license fee."

"Secs. 3673 and 3676 GC, insofar as they purport to authorize the requirement of licenses from transient dealers as a condition to their doing business within the municipality are unconstitutional and void, and ordinances based on these statutes are therefore without effect." Evans v. Wooster, 40 O. C. C., 250. Affirmed in memorandum opinion, **Wooster v. Evans, 92 Oh St 504.**

A municipality may not legally adopt ordinances which are repugnant to the policies of the state as declared in its legislation. "Statutes relative to peddling and street vending indicate that the state recognizes peddling and street vending as lawful businesses and street and itinerant vendors as being engaged in the pursuit of lawful business, thereby precluding municipalities from adopting a contrary policy prohibiting such business." Schul v. King, (Butler County C. P. Court), 70 N. E. 2d 378.

The business of house-to-house solicitation always has been regarded as a useful and lawful occupation.

But counsel for the City contends that soliciting sales at private residences is "a public nuisance, because the city of Washington has declared it to be a nuisance and had ample power to declare the same a nuisance by virtue of the police power invested in the city and by statutory power."

In the first place, the city is wholly without power to declare that to be a "public nuisance" which is not a public nuisance as a matter of fact.

"The nuisance referred to in the statute is that which arises from something dangerous, offensive or unwholesome. It is not sufficient, however, that it should annoy or injure a. single individual, or a small number of persons as compared with the entire community. Such might be a private nuisance; but with that the corporation has nothing to do. Its jurisdiction is restricted to public nuisances. Such a nuisance is one that produces common injury and damage to the public, so that one person cannot be said to sustain any special or particular damage, apart from the rest of the community." Whitcomb v. Springfield, 3 O. C. C., 244, 249. See also **30 O. Jur. 301 et seq.**

Furthermore, "The power to license a business * * * contemplates the continued existence of the business." 53 C. J. S. 462. Therefore, the Legislature, by empowering municipalities to license the business of soliciting, has recognized that business as a useful and lawful occupation, the continued existence of which, may not be prohibited by the city.

How can it be contended that the Legislature would be guilty of such an inconsistency as to authorize municipalities to suppress as a nuisance, that which it empowers them to license as a lawful business?

Furthermore, if the solicitations of sales at private residences really constituted a public nuisance, in fact, then such solicitation could not be permitted even by those who required or invited them." Prior v. White, 132 Fla., 1, 180 So., 347.

A proper consideration of the statutes above discussed irresistibly leads to the conclusion that the state has manifested a purpose to assume complete control over the subject of determining what regulations municipalities may or may not impose upon the business of "traveling from place to place" in municipalities soliciting orders for goods, and to limit the extent of such regulation to the mere licensing of such business.

The Legislature has gone further and declared that "no municipal corporation may require of the manufacturer of any article manufactured by him, license to vend or sell in any way, by himself or agent, any such article." **Sec. 3672 GC,** supra.

In the case of **North College Hill v. Woebkenberg, 59 Oh Ap 458,** North College Hills, pursuant to §3673 GC, supra, passed an ordinance requiring a license to engage in the business of peddling. Woebkenberg was convicted and fined for violation of that ordinance. He was the agent of a dairy company whose products he was peddling. That case holds that "§3672 **GC,** prohibits a municipal corporation from requiring a 'manufacturer of any article manufactured by him' to procure a

license in order to sell such product," and that defendant's conviction was erroneous.

As previously pointed out, the only police power of municipalities over the business of soliciting, is that of merely licensing. By §3672 GC, supra, the Legislature has declared that even that power shall not be exercised against the manufacturer of any article in the sale of his own products. Thus, the manufacturer of an article is left entirely free "to vend or sell in any, by himself or agent, such article."

It should be pointed out that the ordinance attempts to make the "PRACTICE" of going upon private residences, an offense. The affidavit does not charge the defendant with the "practice" etc. It simply charges that he "did go in any upon A PRIVATE RESIDENCE property at No. 404 Van Deman Street." Does the affidavit charge an offense?

The judgment of the Police Court will be set aside and this cause will be remanded to the trial court with instructions to enter judgment in favor of the defendant.