**RETAIL CREDIT COMPANY,**
Plaintiff,

v.

**DADE COUNTY, FLORIDA,**
Defendant.

**No. 74-1104-Civ-CA.**

United States District Court,
S. D. Florida.

March 31, 1975.

As Amended April 25, 1975.

Earl D. Waldin, Jr., Smathers & Thompson, Miami, Fla., for plaintiff.

Robert A. Ginsburg, Asst. County Atty., Miami, Fla., for defendant.

## MEMORANDUM OPINION

ATKINS, District Judge.

This is an action for declaratory judgment and injunction brought by plaintiff Retail Credit Company against defendant Dade County, Florida in which the validity of Dade County Ordinance No. 74–55 as amended by Ordinance No. 74–87 [1] is in question. This Court has federal question and diversity jurisdiction over the subject matter and the parties pursuant to Title 28, United States Code, Sections 1331 and 1332. The matter in controversy exceeds, exclusive of interest and costs, the sum of Ten Thousand Dollars ($10,000.00). Plaintiff, a Georgia corporation, has a permit to do business in the State of Florida and is licensed to do business in Dade County, Florida. Pending the outcome of this litigation, this Court granted a preliminary injunction precluding enforcement of Dade County Ordinance No. 74–55 against plaintiff Retail Credit Company.

Retail Credit Company bases its claim for relief on the grounds: that parts of the Ordinance are inconsistent with the federal Fair Credit Reporting Act, 15 United States Code, §§ 1681–1681t,[2] that the Ordinance constitutes an unauthorized undue burden on interstate commerce, and that the Ordinance violates the due process clause of the Fourteenth Amendment by shifting the burden of proof to the accused in a criminal prosecution as well as prohibiting an otherwise legitimate business activity by precluding plaintiff's Field Representatives from going upon private residential property without invitation.[3]

---

1. The Board of County Commissioners of Dade County, Florida passed and adopted Dade County Ordinance No. 74–55 on July 2, 1974. It was amended by Ordinance No. 74–87 passed and adopted on October 15, 1974. The Ordinance has been incorporated into the Dade County Code as Article XII, Sec. 8A–271–8A–275, hereinafter known as the Ordinance.

2. The Consumer Credit Protection Act (15 U.S.C.S. § 1601, et seq. dealing with truth in lending and related credit matters) was amended by Section 601 of Public Law 91–508, a law dealing primarily with bank records and foreign transactions. Title VI was added which deals with consumer credit reporting and is known popularly as the Fair Credit Reporting Act. This legislation, known hereinafter as the FCRA or the Act, became effective on April 25, 1971. *See* Annot., 17 ALR Fed. 675 (1973).

3. Plaintiff also argues that the Fair Credit Reporting Act, 15 U.S.C. § 1681t, by specifying that persons are not exempt from complying with consistent state laws, precludes regulation by Dade County, a political subdivision of Florida. However, Dade County by constitutional provision has been given the powers of a municipality, Fla. Const. art. 8, § 6(f), and municipalities in Florida "may exercise any power for municipal purposes except as otherwise pro-

The FCRA was aimed at problems in connection with consumer reporting agencies.[4] Congress found that fair and accurate credit reporting is vital to the banking system to maintain efficiency as well as promote public confidence in that system. Further, Congress also recognized the need to "insure that consumer reporting agencies exhibit their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4). In Congress' words:

It is the purpose of this subchapter [§ 1681(b)] to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter. *Id.* (b).

## I. INCONSISTENCY OF ORDINANCE WITH THE FEDERAL FAIR CREDIT REPORTING ACT

Despite Congress' recognition, stated within the FCRA § 1681(a)(2) that consumer investigation and evaluation is done through an "elaborate mechanism," Congress has spoken to allow state regulation consistent with the provisions of the FCRA.[5] In determining whether the Ordinance is consistent with the provisions of the FCRA, this Court's inquiry will not be limited to whether there is a direct conflict between the Or-

vided by law." Id. art. 8, § 2(b). "Municipal purposes" in this context means any activity or power which may be exercised by the state or its political subdivisions. Fla. Stat. § 166.021(2)(1973). Since the subject matter of Dade County Ordinance No. 74–55 as amended by Ordinance No. 74–87 appears to regulate in an area rationally related to a valid police power purpose—safety, privacy and protection of Dade County residents, and exercise of the Ordinance does not infringe on powers of existing municipalities or conflict with general law, Fla.Const. Art. 8, § 6(f), the Ordinance is proper under state law unless otherwise constitutionally infirm. See City of Wilton Manors v. Starling, 121 So.2d 172 (2 D.C.A.Fla.App.1960). City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801 (Fla.1972) is not contra in view of the powers exercisable by Dade County expressed in the Home Rule Charter of 1957. See Home Rule Charter Dade County, Florida, art. 1, § 7.07(A)(12) (21)–(23), (B) (1957). See also, Comment, Municipal Powers in Florida: By Constitutional Right or Legislative Grace, City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801 (Fla.1972), 25 U.Fla.L.Rev. 597 (1973). Furthermore, since there is no conflicting Florida legislation, this Court finds no Congressional purpose to limit "state laws" as used in F.C.R.A. § 1681t to general law of Florida when municipal ordinances may regulate to the limits of state law and the Ordinance in question is not "inconsistent" with the Fair Credit Reporting Act as that term is used in § 1681t of that act. Note that the ordinance in question would yield to an inconsistent general law if one is enacted in Florida. The mere existence of a number of ordinances, absent a general law on the subject, would not in itself amount to an unreasonable burden on consumer reporting agencies. However, there could be a situation where it may become impossible in a practical sense for an agency such as Retail Credit Company to comply with the ordinances when considered cumulatively. Since this issue is not before the Court at this time the Court makes no pretense of deciding it.

4. "Consumer reporting agencies" is defined by the Act, § 1681a(f) as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in . . . the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, . . ." Plaintiff Retail Credit Company is such an agency as defined in the FCRA § 1681a(f) and as defined in § 8A–271(a) of the Ordinance.

5. *Section 1681t provides:*
This subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provision of the subchapter, and then only to the extent of the inconsistency.

dinance and the FCRA, e. g. McDermott v. Wisconsin, 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 754 (1913); E. B. Elliott Adv. Co. v. Metropolitan Dade Co., 425 F.2d 1141 (5 Cir. 1970), cert. den. 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 35 or even whether simultaneous compliance with both the Ordinance and the FCRA is impossible, e. g. Florida Avocado Growers v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Rather, the inquiry shall extend to whether the Ordinance frustrates the effectiveness or purpose of the FCRA, *cf.* Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); Hill v. Florida ex rel. Watson, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 (1945), and whether the Ordinance denies a right or benefit conferred by the FCRA. *See,* United Mine Workers v. Arkansas Oak Flooring Co., 351 U.S. 62, 76 S.Ct. 559, 100 L.Ed. 941 (1956); Silverman v. State Bar, 405 F. 2d 410 (5 Cir. 1968).

### A. *Disclosure of Sources*

The FCRA provides that when information in the files of a consumer reporting agency is disclosed to a consumer, the sources of information acquired solely for preparing an investigative consumer report "need not" be disclosed to the consumer. FCRA § 1681g(a)(2). The Ordinance, on the other hand, goes further and requires disclosure of the sources. Ordinance Sec. 8A–272(a). Thus, at first glance it appears that compliance with the Ordinance would not entail violating the FCRA since the Ordinance is merely stricter than the FCRA. *See, e. g.,* E. B. Elliott Adv. Co. v. Metropolitan Dade County, *supra,* where a Dade County ordinance which prohibited commercial advertising signs within 200 feet of any expressway right of way was held not "inconsistent" with a state statute which prohibited erection of signs within 15 feet of any federal or state highway outside incorporated city or town.[6] However, in view of the circumstances, the sequence of events leading to enactment of the FCRA, and the evidence of legislative intent available, this Court holds that disclosure of the sources of investigative information mandated by the Ordinance is inconsistent with the provisions of the FCRA.

The House and Senate prior to enactment of the FCRA had before them testimony that disclosure of sources of investigative information could potentially result in the "drying up" of those sources. Hearings on S. 823 before the Subcommittee on Financial Institutions of the Senate Committee on Banking and Currency, 91st Cong., 1st Session (1961) 173, 179–180, 347–348; [hereinafter referred to as to the Senate Hearings]; hearings on H.R. 16340 before the Subcommittee on Consumer Affairs of the House Committee of Banking and Currency, 91st Cong., 2nd Session (1970) 460, 466–467, 508, 511, 520 [hereinafter referred to as the House

---

6. In the *Elliott* case, *supra,* "inconsistent" was used in the context of the Florida Constitutional provision, Art. 8, § 6(f), which provides that Dade County has powers to the extent they are not inconsistent with powers of existing municipalities or general laws. *See* note 3, *supra.* The *Elliott* case is distinguishable from the case sub judice since in *Elliott* there was no federal-state preemption issue involved and no indication that the state legislature had engaged in a careful balancing process to resolve competing policy considerations which, after trial and error resulted in compromise position. Furthermore, the Florida Constitutional provision construed in *Elliott* has been historically interpreted in a remedial manner to give Dade County the powers of a munici-pality, thus in this context "inconsistency" has been narrowly defined to mean contradictory in the sense of legislative provisions which cannot coexist. Note the sequence of events outlined in State ex rel Dade County v. Brautigam, 224 So.2d 688, 691–693 (Fla. 1969). *See also,* Metropolitan Dade County Board of County Commissioners v. Rock-mott Corp., 231 So.2d 41 (3rd D.C.A.Fla. 1970). It is clear in the present case that the intent of Congress would best be effec-tuated by making inquiry into the circum-stances and legislative history to determine what state laws would be "inconsistent" with the provisions of the F.C.R.A. as that term is used in § 1681t of that act. *See* Note 5 *supra.*

Hearings]. The August 28, 1969 version of S. 823 [§ 166(c)] and the March 5, 1970 version of H.R. 16340 [§ 32] provided that if an individual disputed an allegation by an unidentified source and was unable to refute the allegation adequately, he could demand the names of the sources. However, in both the October 4, 1969 version of S. 823 and in the August 17, 1970 version of H.R. 16340 this proposal for source disclosure was omitted. The latter version of H.R. 16340 required only disclosure of consumer credit information by consumer reporting agencies. The Conference Report, Statement of Managers on the Part of the House, H.R.Rep.No. 91–1587, 91st Cong., 2nd Session (1970) at 29, U.S.Code Cong. & Admin.News 1970, pp. 4411, 4415, revealed that conferees of both Houses of Congress intended § 1681g "to permit the consumer to examine all the information in his file except for sources of investigative information . . . ." Thus, it appears that investigative information source disclosure was considered in committee hearings, contained in prints of the principal bills before the committees, and deliberately omitted from the final bill.[7] Accordingly, this Court holds that disclosure of sources of investigative information as provided for in the Ordinance is inconsistent with the provisions of the FCRA. The FCRA already provides substantial safeguards to protect consumers from inaccurate information in that Congress has provided a procedure whereby a consumer can, upon request, obtain the nature and substance of all information on that consumer in the files of the consumer reporting agency at the time of the request, § 1681g(a)(1). A procedure is provided whereby incomplete or inaccurate information can be corrected if reinvestigation solves the dispute; or, if reinvestigation does not solve the dispute, subsequent consumer reports distributed to users of the reports shall so note that the information is disputed. FCRA § 1681i. Furthermore, should the consumer decide to bring an action under the FCRA §§ 1681–1681t, as a plaintiff in the suit, he may discover the sources of investigative information under appropriate discovery procedures in court.

B. *Disclosure of Medical Information*

The FCRA makes an express exception from its disclosure requirements for medical information.[8] Medical information is defined in the FCRA as "information or records obtained, with the consent of the individual to whom it relates, from licensed physicians or medical practitioners, hospitals, clinics, or other medical or medically related facilities. FCRA § 1681a(i).[9] Since the Ordinance makes no exception in its disclosure requirements for medical information, Ordinance Sec. 8A–272, plaintiff Retail Credit Co. contends that the Ordinance is "inconsistent" with the FCRA.

Legislative history on the question of disclosure to consumers of medical information reveals that such disclosure was not required "in order to protect the traditional relationship between the doctor supplying the information and his patient," 116 Cong.Rec. 17634 (Oct. 9, 1970), "the rationale was that raw medical information should only be tendered with the counsel of a physician

7. Although it is unnecessary for the decision this Court reaches, an amendment to the FCRA was introduced and subsequently rejected which would have required investigative source disclosure. S. 2360, 93rd Congress, 1st Sess. (1973).

8. FCRA § 1681g provides in pertinent part: (a) Every consumer reporting agency shall, upon request and proper identification of any consumer, clearly and accurately disclose to the consumer:

(1) The nature and substance of all information (except medical information) in its files on the consumer at the time of the request.

9. At this point it should be noted that "medical information" as defined in § 1681a(i) does not include comments on a consumer's health by non-medical personnel. The FCRA thus does not preclude disclosure of this type of information to the consumer.

or other medically trained personnel . . . ." H.R.Rep.No. 91–158F, 91st Cong., 2nd Sess. (1970) 28. Furthermore, subsequent amendments were proposed and rejected which would have required disclosure of medical information to consumers under certain circumstances.[10] Therefore, this Court finds an express Congressional purpose to prevent disclosure of medical information to the consumer and the exclusion of an exception to disclosure of medical information under the ordinance is "inconsistent" with the FCRA under § 1681t.

However, testimony at trial revealed that plaintiff Retail Credit Company was concerned primarily with information related about a consumer's health by non-medical personnel, e. g., neighbors of that consumer. Since this type of information is not "medical information" as defined under the FCRA, revelation of it is not inconsistent with the provisions of the FCRA. Consequently, Section 8A–272 of the Ordinance is not invalid because it fails to make an exemption from disclosure of this type of information to the consumer.

### C. *Qualified Immunity*

The FCRA § 1681h(e) gives a qualified immunity from suit in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information based on information disclosed pursuant to § 1681g [disclosure to consumers upon request and proper identification], 1681h [conditions of disclosure to consumers—times and notice],

or § 1681m [advising consumer if adverse action is taken because of information contained in a consumer report]. § 1681h(e) provides that this immunity is given the consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency and an exception from the qualified immunity is made for actions pursuant to § 1681n [civil liability of consumer reporting agency or user of information for failure to comply with any provision of the FCRA allowing actual damages sustained by the consumer as a result of the failure, punitive damages, and attorney's fees] and 1681o [civil liability of consumer reporting agency or user of information for failure to comply with any requirement of the FCRA allowing actual damages sustained by consumer as a result of the failure and attorney's fees]. For excellent discussions of the remedies available to the consumer see The Impact of the Fair Credit Reporting Act, 50 N.C. L.Rev. 852 (1972); Protecting the Subjects of Credit Reports, 80 Yale L.J. 1035 (1971). Interestingly, no remedy is available under the FCRA against the person who furnishes information to a consumer reporting agency unless "false information is furnished with malice or wilful intent to injure" the consumer. § 1681h(e). Thus, it appears that sources have a statutory privilege under the FCRA.

Plaintiff Retail Credit Company urges that by not providing the qualified immunity the Ordinance is "inconsistent" with the FCRA because if suit is

---

10. Section 4(2) of S. 2360, 93d Cong., 1st Sess. would have amended section 1681g(a)(1) to require consumer reporting agencies to advise the consumer of the *existence* of any medical information withheld from the consumer during the course of a disclosure under § 1681g, and to advise the consumer of his right to have such information furnished to a licensed physician of his choice. In addition, section 4(4) of S. 2360 woud have added a new subsection (c) to § 1681g of the FCRA requiring consumer reporting agencies to furnish medical information withheld from the consumer under §

1681g(a)(1) to a licensed physician designated by the consumer. Section 609(a)(1) of Committee Print No. 1 would have gone further, excepting only third-party medical information from its disclosure requirements, and would have required consumer reporting agencies to advise the consumer of the existence of any such third-party medical information not disclosed to him during the course of a disclosure under § 1681g, and to advise him of his right to have such third-party medical information furnished to a licensed physician of his choice.

brought utilizing information disclosed under the Ordinance and not under the FCRA the consumer reporting agencies would be subject to suits regardless of the presence or absence of malice since there would be no qualified privilege with respect to information not disclosed under the FCRA. Plaintiff cites the erosion of the qualified privilege of mercantile agencies under Florida law. Vinson v. Ford Motor Credit Co., 259 So.2d 768 (1st D.C.A.Fla.App., 1972).

■ It is clear that the qualified immunity provided for by the FCRA is meant by Congress to be the "quid pro quo for full disclosure," [Senator Proxmire in colloquy with Senator Javits, 115 Cong.Rec. 13908 (November 6, 1969),] but it is equally clear from the language of the FCRA § 1681h(e) that this was meant to be limited to "information disclosed pursuant to section 1681g, 1681h, or 1681m" of the FCRA. Inasmuch as the process of disclosure under the Ordinance [Sec. 8A–272(a) [11]] is substantially similar to the procedure provided for in § 1681g(a)(1), (2) and (3) of the FCRA,[12] it would be inconsistent with the provisions as well as contrary to the intent of the drafters of the FCRA to not allow the qualified im-

munity to the extent mandated by the FCRA if disclosure is made pursuant to the ordinance.[13] This is not to say that there should be the qualified immunity provided under the FCRA when the consumer learns of information in his file by any other manner than by disclosure substantially similar to that provided by the FCRA. In that case state law should govern the existence and application of any immunity with respect to consumer reporting agencies, users of information, or those who furnish information to consumer reporting agencies. Therefore, this Court holds that Section 8A–272(a) is invalid to the extent that it fails to perpetuate the qualified immunity given by the FCRA since the process for source disclosure under the ordinance is substantially similar to the process for source disclosure provided by the FCRA.

### D. Provision of Copies of Reports

The FCRA requires the consumer reporting agency to disclose to the consumer the "nature and substance of all information (except medical information) in its files on the consumer at the time of the request." FCRA § 1681g(a)(1). However, the Ordinance

---

11. Sec. 8A–272 of the Ordinance provides in pertinent part:

"(a) Every consumer reporting agency shall, upon request and proper identification of any consumer, provide said consumer with a copy of its investigative consumer report pertaining to said consumer at the time of the request, including but not limited to the names and addresses of all persons contacted by the consumer reporting agency, or its agents or employees, and the specific information obtained from each person contacted by the agency. It shall be sufficient for the purposes of this subsection if a complete carbon or photostatic ·copy of the report is provided to the consumer."

12. Sec. 1681g. Disclosures to consumers

"(a) Every consumer reporting agency shall, upon request and proper identification of any consumer, clearly and accurately disclose to the consumer:

"(1) The nature and substance of all information (except medical information) in its files on the consumer at the time of the request.

"(2) The sources of the information; except that the sources of information acquired solely for use in preparing an investigative consumer report and actually used for no other purpose need not be disclosed: Provided, That in the event an action is brought under this subchapter, such sources shall be available to the plaintiff under appropriate discovery procedures in the court in which the action is brought.

"(3) The recipients of any consumer report on the consumer which it has furnished

"(A) for employment purposes within the two-year period preceding the request, and
"(B) for any other purpose within the six-month period preceding the request." ,

13. Section 5(c) of S. 2360, 93d Cong., 1st Sess. (1973) and section 610 of Committee Print No. 1 would have deleted § 1681h(e) from the FCRA. This proposal was rejected when the Senate Subcommittee ·on Consumer Credit voted to table S. 2360 on November 27, 1973.

requires the consumer reporting agency to provide a copy of the investigative consumer report pertaining to the consumer at the time of the request. Sec. 8A–272.[14] The Ordinance also provides that a reasonable charge not exceeding the cost of copying the report may be imposed on a consumer. Sec. 8A–273.

■ Although this Court notes that Congress did not require in the FCRA that a copy of the investigative consumer report be furnished to consumer even though this was discussed in the committees, Senate Hearings 89, 116, 153, 232, 368; House Hearings 428, 453, and 608, and a subsequent amendment was never enacted into law which would have required a copy of a consumer's file to be furnished to the consumer, S. 2360, 93d Cong. 1st Sess. § 5(3) (1973), this Court holds that in requiring a copy of the report to be furnished to the consumer the Ordinance is not "inconsistent" with the provisions of the FCRA as that term is used in § 1681t. Disclosure of a copy of the report to the consumer appears to be consistent with the Congressional intent to protect consumers from inaccurate or incomplete information without upsetting the balance by unduly burdening the credit reporting agencies particularly since the copying costs are to be borne by the consumer himself. As discussed above, conformance with the requirement for nondisclosure of investigative sources requires that the names and addresses of the sources be blackened out or otherwise stricken illegibly from the copy furnished the consumer.

## II. INTERSTATE COMMERCE

Plaintiff contends that the Ordinance constitutes an undue burden on interstate commerce by requiring source disclosure and requiring consumer reporting agencies to furnish a consumer with a copy of his report. It was stipulated that the consumer reports do move in interstate commerce.

Since the source disclosure requirement has already been held invalid as inconsistent with the provisions of the FCRA, see above, this Court finds it unnecessary to determine if this requirement unduly burdens interstate commerce. This Court does hold that requiring a consumer reporting agency to furnish a copy of a consumer report prepared on that consumer is not a burden on interstate commerce so as to warrant preclusion based on the Commerce Clause, Article I, Section 8 of the Constitution of the United States.

## III. DUE PROCESS

A. *The Ordinance Places the Burden of Proving Maintenance of Reasonable Procedures for Insuring Accuracy of Investigative Consumer Reports on the Consumer Reporting Agency*

Plaintiff alleges that Section 8A–274.-2(b) of the Ordinance [15] removes the presumption of innocence that applies to the defendant in criminal proceedings and casts upon that defendant the burden of proving its innocence by a preponderance of evidence. The defendant, on the other hand, argues that Section 8A–274.2(b) provides a limited defense to a criminal charge which would not otherwise be available to a defendant.

---

14. See Note 11, *supra*.

15. Sec. 8A–274.2 of the Ordinance provides:
 "(a) The consumer reporting agency shall maintain reasonable procedures to insure maximum possible accuracy of investigative consumer reports. Such procedures insofar as all investigative consumer reports completed by field representatives with less than one year experience shall include supervision of such field representatives by the person in charge of the consumer reporting agency or his delegate.
 "(b) No consumer reporting agency may be held liable for any violation of subsection (a) of this section if it shows by a preponderance of the evidence that at the time of the violation it maintained reasonable procedures to assure compliance with subsection (a)."

■ This Court holds that Section 8A–274.2(b) violates Due Process since it shifts the burden of persuasion to the accused. Smith v. Smith, 454 F.2d 572 (5th Cir. 1971). Section 8A–274.2(a) requires a consumer reporting agency to maintain reasonable procedures to insure maximum possible accuracy of investigative consumer reports. Section 8A–274.2(b) places upon the consumer reporting agency under threat of criminal sanctions the burden of proving by a preponderance of evidence that it maintained reasonable procedures to assure compliance with subsection (a) and, by so requiring relieves the prosecutor of the burden of proving beyond a reasonable doubt that a consumer reporting agency did not maintain reasonable procedures. Defendant's contention that subsection (b) is an affirmative defense not otherwise available to a consumer reporting agency is without merit. Accordingly, Section 8A–274.2(b) is invalid since it clearly violates Due Process.

B. *The Ordinance Declares the Uninvited Going In and Upon Private Residences in Dade County by Field Representatives a Nuisance*

Plaintiff alleges that Sec. 8A–274,[16] which declares a nuisance the uninvited going in and upon private residences in Dade County by field representatives,[17] is an unreasonable exercise of the police power that violates the Due Process Clauses of the Fourteenth Amendment of the Federal Constitution and Florida Constitution, Art. 1, § 9. On the other hand, defendant County contends that due to the large number of investigative consumer reports prepared by the plaintiff alone [64,000 in six months] and the sensitive nature of the subjects of each report [character, reputation, mode of life of a consumer] the restrictions should be held reasonable since they "should help insure a greater degree of accuracy in the information given and limit to some extent 'off-the-cuff' generalizations by hurried or angered neighbors and acquaintances." Defendant's Memorandum at 7. Defendant also argues that only the manner in which information may be acquired is regulated while the information which may be included is not regulated in any way.

■ When regularly enacted, an ordinance is cloaked with all presumptions of validity, constitutionality and reasonableness, and one attacking an ordinance has the burden to overcome these presumptions. An ordinance must be reasonable and not conflict with any controlling provision or principle of general law. City of Miami Beach v. Texas Co., 141 Fla. 616, 194 So. 368 (1940); See Fla.Const., Art. 8, § 6(f) (pertaining specifically to Dade County Ordinances). Courts are generally reluctant to declare a municipal ordinance invalid in view of the principle that citizens of a municipality through their local legislative body should be permitted to determine what regulatory measures are needed for their own self government. Wilton Manors v. Starling, 121 So.2d 172 (2nd D.C.A.Fla.App.1960).

In Prior v. White, 132 Fla. 1, 180 So. 347 (1938), the Florida Supreme Court held invalid a municipal ordinance declaring a nuisance and punishable as a

16. Sec. 8A–274 of the Ordinance provides: "The practice of going in and upon private residences in Dade County, Florida, by field representatives not having been requested or invited so to do by the occupant of said private residences for the purpose of obtaining information on a consumer's character, general reputation, personal characteristics or mode of living through personal interviews with neighbors, friends, associates or acquaintances of a consumer is declared to be a nuisance and punishable as a violation of this article."

17. Field representative is defined in the Ordinance as any person who collects information in Dade County on a consumer's character, general reputation, personal characteristics or mode of living through personal interviews with neighbors, friends, associates or acquaintances of the consumer reported for the purpose of preparing investigative consumer reports. Sec. 8A–271(d).

misdemeanor the practice of going in and upon private residences by solicitors, peddlers, hawkers, itinerant merchants, and transient vendors of merchandise not being requested or invited to by the owner or owners. *Prior* was a habeas corpus action in which the Court, by a 4–3 decision held the ordinance invalid as applied to petitioner Fuller Brush Co. salesman because evidence indicated that soliciting orders for sale of goods at private homes was not a nuisance, no evidence was presented at trial to show the practice constituted a nuisance, and petitioner met his burden by showing the ordinance was unreasonable, unfair, and oppressive. *Id.* at 355, 356. Pivotal was that house to house solicitation had become an ordinary, useful, and lawful method of doing business; thus the Court concluded that by the attempted exercise of its police power a municipality cannot prohibit such a legitimate method of doing business.

The United States Supreme Court in Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), upheld a similar ordinance against attack by a house-to-house solicitor of magazine subscriptions. Like *Prior*, *Breard* was a habeas corpus proceeding. In *Breard*, the ordinance was upheld against attack based upon the Fourteenth Amendment Due Process Clause,

the Commerce Clause, and the First Amendment prohibition against abridgment of freedom of the press. *Prior* was cited in *Breard* as holding that the ordinance being attacked by Prior regulated conducted that could not be more than a private nuisance. *Breard, Id.* at 628, n. 6.[18] Therefore, *Breard* did not overrule *Prior* since *Prior* was decided only on state grounds but the *Breard* ordinance is sufficiently analogous to the ordinance being attacked in the present case to control on Fourteenth Amendment Due Process Clause and Commerce Clause grounds.

Subsequent to these cases, in another 4–3 decision, a Florida Statute [§ 636.-261] which prohibited direct or indirect solicitation by public adjusters was held invalid by the Supreme Court of Florida. Larson v. Lesser, 106 So.2d 188 (Fla.1958). The *Larson* Court held § 636.261 made it impossible from a practical standpoint for public adjusters to engage in a business which was otherwise recognized by statute as being lawful. No public need could be ascertained for the statutory regulation, hence no "sound basis of necessity to protect the public morals, health, safety, or welfare" could be found. *Id.* at 191. The dissent in *Larson* distinguished the Prior v. White case since the dissent believed the *Larson* regulation was bothersome but

---

18. In this lengthy footnote, the Supreme Court by Mr. Justice Reed cited numerous state court cases and their treatment of ordinances similar to the "Green River Ordinance" at bar in the *Breard* case. After discussing state cases in which the ordinance was upheld, the Court treated the cases which have overturned the ordinance paying particular attention to the fact that the ordinances were held invalid on various grounds not at issue in the *Breard* case:

"Eleven states, on the other hand, have held such ordinances invalid. All of these states acted in part at least on nonfederal grounds, and the only federal constitutional argument, which was considered by three states, [*Prior* was not one of these] was that based on the Due Process Clause. No state court, in voiding the ordinance, has reached the Commerce Clause or the First Amendment issues urged

here. The principal grounds relied on have been that the prohibited conduct amounted at most only to a private nuisance and not a public one; that there was no showing of injury to public health or safety by the prohibited conduct; that there was a vested right in a lawful occupation, so that it was subject only to regulation but not to prohibition; and that the ordinance was beyond the delegated powers of the municipality. Prior v. White, 132 Fla. 1, 180 So. 347, 116 A.L.R. 1176 (not more than a private nuisance) ; . . ."

By so specifying these state grounds and thereby attempting to distinguish these enumerated state cases which invalidated the ordinances, the Supreme Court exhibited its intention not to disturb these state cases. Therefore, the *Breard* case did not overrule the *Prior* case.

did not destroy the legitimate business even though 90% of the public adjuster's business was obtained through direct solicitation. The dissent also concluded that plaintiff had not overcome the presumption of validity of the statute in question.

Analogous to the activity at issue in the *Larson* case, the collection of character data is recognized as a legitimate business activity under the laws of Florida. Chapter 493, Florida Statutes, regulating Private Investigative Agencies, specifically exempts from regulation those persons described as "field representatives" by the ordinance. Fla.Stat. § 493.11(1)(e) (1973). Also, character data is required in connection with issuance of licenses to act in many capacities within the insurance industry. Fla.Stat. § 626.521(1). Investigative consumer reports serve at least as important a social function as character reports on insurance personnel since investigative consumer reports tend to encourage credit transactions which are vitally important to consumers as well as to the economy. Watwood v. Stone's Mercantile Agency, Inc., 90 U.S.App.D. C. 156, 194 F.2d 160, 161, cert. denied, 344 U.S. 821, 73 S.Ct. 18, 97 L.Ed. 639 (1952).

Evidence plaintiff presented at trial established that enforcement of Section 8A–274 of the Ordinance would substantially impair plaintiff's preparation of investigative consumer reports within the test espoused in *Larson, supra,* and make reports on some lower income customers virtually impossible to prepare. Requiring field representatives to get prior permission before going in and upon private residences necessitates advance telephoning to seek permission. Often sources are unlisted, have no telephones, or share common public telephones among several family units which cumulatively make many sources unreachable by a field representative seeking permission to interview.[19] Further, in practice, complying with the prior invitation requirement of the Ordinance resulted in preparation of reports with fewer sources, reports which took substantially longer to prepare, and some reports could not be completed at all. Every segment of the population is benefited by easy availability of credit but it is the lower income person who must often depend upon credit for the basic necessities of life. *See,* Williams v. Walker-Thomas Furniture Co., 121 U.S.App.D.C. 315, 350 F.2d 445, 450 (1965) (dissenting opinion); *see also,* The Impact of the Fair Credit Reporting Act, 50 N.C.L.Rev. 852 (1970–1971). Thus, it appears that Section 8A–274 of the Ordinance has the effect not only of substantially impairing the ability of the consumer reporting agencies such as plaintiff to do business but also of decreasing the number of available sources, the effect of which can only tend to decrease the accuracy of credit reports contrary to the stated purpose of Section 8A–274.

The reasoning of the Prior v. White case, *supra,* is also applicable to the case sub judice. Not unlike soliciting orders for sale of goods, investigations by field representatives are a legitimate, ordinary, and useful method of doing business; and no evidence presented at trial indicated that the uninvited going in and upon private residences by field representatives was a public nuisance, City of Miami Beach v. Texas Co., *supra,* but instead, such activity could perhaps constitute a private nuisance abatable or preventable by the owner or owners of the affected residence(s). Breard v. City of Alexandria, *supra.*

 Thus, this Court holds that Section 8A–274 is unreasonable as applied

---

19. Additionally, evidence at trial indicated that telephone numbers for those residing in certain large apartment or condominium complexes, *e. g.,* Morton Towers, are not listed within the telephone directory by apartment numbers but instead, are listed solely by the building address. Consequently, chance alone governs the success of contacting by telephone individual apartment dwellers who reside near the customers being investigated.

to plaintiff Retail Credit Co. since the section declares a public nuisance conduct which could be at most only a private nuisance, and it substantially impairs preparation of investigative consumer reports—an activity legitimate under state legislation and an ordinary and useful method of doing business. Furthermore, this Court fails to find a rational relationship between the demands of public health, welfare, or safety and the restraint imposed by this act.

### C. *Equal Protection*

Plaintiff challenged the Ordinance on equal protection grounds since the Ordinance regulates activities of Field Representatives while excluding other occupations from regulation, *e. g.*, social workers, representatives of public and private welfare agencies, private investigators, insurance investigators, etc.

This Court holds that there is a reasonable basis for this classification and therefore it does not deny equal protection to the plaintiff. Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L. Ed.2d 231 (1971) approving test of Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). The Ordinance regulates the same consumer reporting agencies already singled out for regulation by the FCRA. Field Representatives perform a function highly critical to the consuming public in that the reports they prepare are incident to granting insurance, credit, or employment and thus are distinguishable from the activities cited by plaintiff due to the potential for harm to the general public.

### CONCLUSION

This Court holds that, as applied to plaintiff Retail Credit Company:

1. Section 8A–272(a) of the Ordinance is inconsistent with the FCRA inasmuch as the Ordinance requires disclosure of the sources of investigative information and thus is invalid to the extent of the inconsistency. Accordingly, this Court does not reach the issue of whether such source disclosure violates the Commerce Clause of the federal constitution.

2. Likewise, by not providing an exemption for true "medical information" as that term is defined by the FCRA, the Ordinance Section 8A–272 is inconsistent with the FCRA. However information gleaned from nonmedical personnel, *i. e.* friends, neighbors, etc. of the consumer related to the health of the consumer is not "medical information" and the Ordinance is not inconsistent with the FCRA in not requiring protection of this type of information.

3. Since disclosure of information in a consumer's file under the Ordinance Section 8A–272(a) is substantially similar to the process of disclosure under the FCRA, the Ordinance is invalid to the extent it does not perpetuate the qualified immunity given by the FCRA to the consumer reporting agency, the users of information, and the sources who furnish information to the consumer reporting agency.

4. The Ordinance's requirement of furnishing consumers with copies of investigative consumer reports [minus sources] is not inconsistent with the provisions of the FCRA. Furthermore, this requirement does not unduly burden interstate commerce in a manner which warrants preclusion of the requirement under the Commerce Clause of the federal constitution.

5. The Ordinance, Section 8A–274.-2(b), places the burden of persuasion to prove maintenance of reasonable procedures for insuring accuracy of investigative consumer reports on the defendant consumer reporting agency. By so doing Section 8A–274.2(b) violates Due Process by reducing the burden on a prosecutor to prove beyond a reasonable doubt that reasonable procedures were not maintained.

6. Section 8A–274 of the Ordinance is unreasonable and hence invalid since it declares the uninvited going in and upon private residences by field representatives a public nuisance which could

at most be a private nuisance, it substantially impairs preparation of investigative consumer reports which has heretofore been recognized under state law as a legitimate, ordinary and necessary way of doing business, and it bears no ascertainable rational relationship to a valid police power purpose.

7. The Ordinance does not deny the plaintiff equal protection by regulating its field representatives since the activities of field representatives are reasonably distinguishable from activities of other investigative personnel cited by plaintiff due to the magnitude of public harm potentially attributable to field representatives.

Accordingly, the temporary injunction entered by the Court is hereby dissolved and a permanent injunction shall issue against enforcement against plaintiff Retail Credit Company of any provisions of the Ordinance which have been herein declared invalid.

ORDER AMENDING MEMORANDUM OPINION WHICH WAS BY REFERENCE MADE A PART OF THE FINAL JUDGMENT AND PERMANENT INJUNCTION

This cause having come before this Court on plaintiff Retail Credit Company's Emergency Motion to Amend Judgement and the Court having considered the memoranda of counsel and being otherwise fully advised, it is ordered and adjudged that the motion is hereby granted.

The Final Judgment is hereby modified by

1. Adding the following language to paragraph 4 of CONCLUSION:

"Plaintiff shall not be required to furnish consumers with copies of investigative consumer reports [minus sources] until such time as Dade County shall effectively amend its ordinance to contain immunity provisions equivalent to those set forth in Title 15, U.S.C., § 1681h(e), 1681n and 1681o."

2. Adding an additional paragraph to the CONCLUSION:

"8. No consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency based on information disclosed pursuant to Ordinance Section 8A–272(a) except as to false information furnished with malice or wilful intent to injure such consumer, and then only to the same extent and under the same circumstances as provided for by Title 15, U.S.C., § 1681n and § 1681o."

These amendments are required to perpetuate the qualified immunity provided by the Fair Credit Reporting Act and to prevent plaintiff Retail Credit Company from being exposed to possible liability due to its furnishing copies of investigative consumer reports to consumers until Dade County amends its Ordinance to contain immunity provisions equivalent to those of the FCRA, 15 U.S.C. §§ 1681h(e), 1681n, and 1681o.