Jerry L. JACOBS, Plaintiff,

v.

CITY OF JACKSONVILLE, James E. McMillan, as Sheriff of Duval County, Florida, Defendants.

No. 90–247–Civ–J–16.

United States District Court, M.D. Florida, Jacksonville Division.

April 8, 1991.

Howard L. Dale, Jacksonville, Fla., for plaintiff.

Leonard S. Magid, City of Jacksonville, Gen. Counsel's Office, Jacksonville, Fla., for defendants.

## ORDER

JOHN H. MOORE, II, District Judge.

This cause was tried before the Court on March 11, 1990. In accordance with Federal Rule of Civil Procedure 52, and having considered the testimony and evidence adduced, the arguments of counsel, and all memoranda of law submitted by the parties, the Court now issues the following findings of fact and conclusions of law.

### DISCUSSION

#### I. Facts

Plaintiff, Jerry L. Jacobs, does business under the fictitious name of Youth Opportunities Unlimited (hereinafter "Y.O.U."), and is a person who, personally and through his employees, sells or offers for sale merchandise by traveling from door-to-door, while carrying such merchandise. Y.O.U. is a for-profit organization which derives income through the sale of cookies, candy, and other items. These sales are conducted primarily by teenagers who are Y.O.U. members. Plaintiff holds a city permit to operate as a peddler of merchandise.

Plaintiff and the Y.O.U. organization engage in the activity of selling door-to-door in residential neighborhoods in Jacksonville, Florida. The activity is conducted by young people, ages twelve to seventeen, from area schools under the supervision of Plaintiff and other adult supervisors. Approximately 75 young people participate in the program. Sales are made three to four days per week, generally for three hours on school days and eight hours on Saturdays. On school days, the young people are picked up from school by the Plaintiff or another adult supervisor, beginning sales at 5:00 p.m. and finishing at approximately 8:00–8:30 p.m.

Plaintiff manages Y.O.U. from a warehouse and sales office in Jacksonville. From this location, Plaintiff sells Y.O.U. products to each of the adult supervisors of the program, who in turn distribute the products to the young people under their supervision. Plaintiff and Y.O.U. do not use this location to make retail sales, and

do not operate a retail outlet. The final sale of the product is made by the young person selling door-to-door.

Upon joining the Y.O.U. program, the young people are given a brief training in basic sales techniques, including the proper presentation of themselves and their product. For the purposes of training the participants and providing an example of effective sales techniques, Plaintiff personally goes to the doors of residences in Jacksonville to sell candy on occasion. A Y.O.U. salesperson carries an effective message to his or her customers in an attempt to persuade the customer to make a purchase. The salespitch combines a smooth and somewhat humorous description of the Y.O.U. product line with a strong anti-drug abuse message. While the salesperson does not usually inform the customer that Y.O.U. is a for-profit organization *per se*, Y.O.U.'s sales practices are not misleading, in that the typical Y.O.U. salesperson candidly advises the customer that one purpose behind their sales drive is the salesperson's own desire to earn money.

Plaintiff and the Y.O.U. salespersons conduct the door-to-door sales activities in various neighborhoods in Jacksonville on a rotating basis; as a result, sales in any particular neighborhood are made no more than a few times per year. Each individual Y.O.U. product item is sold to the consumer for $4.00. In 1990, approximately 90,000 individual Y.O.U. products were sold to residences in Jacksonville. Sales were consummated at approximately 40–50% of the residences solicited by Y.O.U. On average, approximately one Y.O.U. item was sold for each residence solicited. No evidence was introduced to show that a large number of the residences solicited found Y.O.U.'s sales activities to be annoying or injurious, although the evidence did show that Y.O.U. salespeople are occasionally unwelcome at a few residences.

In addition to its main activity of door-to-door sales, the Y.O.U. organization also coordinates and promotes youth activities for those involved in the program. Group activities conducted in the past have included beach parties, bowling, movies, and a visit to an anti-drug seminar. Also, awards and trophies are handed out to those youth who have achieved a high level of sales, and to those who have participated with the program for an extended period of time.

## II. The ordinance at issue

The City of Jacksonville, through Officer J.P. Baptist of the Jacksonville Sheriff's Office, has threatened Plaintiff with arrest under J.O.C. § 250.303, for engaging in residential door-to-door peddling activities without invitation. Section 250.303 of the Jacksonville Ordinance Code provides:

**Peddling to private residences prohibited.** The business of going in, upon or to a private residence in the City by a solicitor, peddler, hawker, itinerant merchant or transient vendor of merchandise who has not been requested or invited to do so by the owner or occupant of the private residence, for the purpose of:

(a) soliciting orders for the sale of goods, wares and merchandise; or

(b) disposing of, peddling or hawking goods, wares and merchandise;

is declared to be a nuisance and unlawful and is punishable as a class D offense.

In most instances, Plaintiff has not been expressly "requested or invited" by the owner or occupant of the private residence before engaging in door-to-door sales activity. *See* J.O.C. § 250.303. Plaintiff does not solicit at any private residence where a "No Solicitation" sign is visible.

■ Plaintiff contends that the ordinance is completely inapplicable to his activities, since he does not come within the definition of "peddler" as defined in the Code. Section 250.101(b) of the Code defines "peddler" as "a person who sells or offers for sale merchandise or services or both by traveling from place to place, carrying any such merchandise if selling or offering to sell same, without operation from a fixed business location for the exhibition and sale of such merchandise or services or both." The Court finds that Plaintiff is a "peddler" as defined in the Code, for two reasons. First, Plaintiff does not

dispute that he "sells or offers for sale merchandise ... by traveling from place to place, carrying any such merchandise if selling or offering to sell same." Second, while Plaintiff does maintain a "fixed business location," Plaintiff does not operate from that location "for the exhibition and sale of ... merchandise" as contemplated by the Code. Sales from Plaintiff to the other Y.O.U. group leaders are not retail sales contemplated by the Code. The Court also finds that any recent sales from Plaintiff's warehouse to persons other than Y.O.U. group leaders are too few to qualify for the "fixed business location" exemption, and that such sales are, in any event, an invalid attempt to qualify for the exemption *post hac*.[1] Accordingly, the Court finds that Plaintiff is a "peddler," subject to the prohibition on door-to-door peddling set forth in J.O.C. § 250.303.

### III.  Florida law with respect to anti-peddling laws

Under Florida law, unless a homeowner manifests externally in some manner his or her wish to remain unmolested by the visits of solicitors or peddlers, a solicitor or peddler may take custom and usage as an implied invitation to call upon residences where such custom and usage exists. *Prior v. White*, 132 Fla. 1, 180 So. 347, 355 (1938). In *Prior*, the Florida Supreme Court invalidated an anti-peddling ordinance of New Smyrna Beach, Florida, as applied to the door-to-door sales activities of a Fuller Brush Company salesman. The New Smyrna ordinance was virtually identical to the Jacksonville ordinance now at issue. The court held that peddling and soliciting in New Smyrna was not a public nuisance because custom and usage established an implied invitation to solicit sales at private residences, and therefore could not be punished as a crime or misdemeanor. *See Prior*, 180 So. at 356. The court further held that a municipality cannot, through an attempted exercise of its police powers, declare by ordinance or otherwise that an activity is a public nuisance, when

in fact such activity is not proved to be a public nuisance. *See id.*

■ *Prior v. White* is still good law in Florida, never having been overruled by the Florida Supreme Court. Recent cases also have held that a municipality may not declare an activity to be a public nuisance unless that activity does in fact constitute a public nuisance. *See Carter v. Town of Palm Beach*, 237 So.2d 130 (Fla.1970); *Orlando Sports Stadium, infra*, 262 So.2d at 884 (stating that each case in which the government asserts that an activity constitutes a public nuisance "must turn upon the facts and be judicially determined"); *Larson v. Lesser*, 106 So.2d 188, 191 (Fla. 1958) (holding that a Florida statute which prohibited direct solicitation by public adjusters was an invalid exercise of the police power because the statute had no "basis of necessity to protect the public morals, health, or welfare."); *see also Retail Credit Co. v. Dade County*, 393 F.Supp. 577 (S.D.Fla.1975) (relying on *Prior* to invalidate an ordinance which declared the uninvited going in and upon private residences in Dade County by field representatives of consumer reporting agencies a public nuisance). In addition, Florida courts continue to recognize the implied invitation theory. *See Fletcher v. Florida Publishing Company*, 319 So.2d 100, 104–05 (Fla. 4th D.Ct. App.1975) (stating that "permission to go upon the premises of another may be implied from custom, usage or conduct," although "such implied consent is necessarily limited to those acts which are within a fair and reasonable interpretation of the terms of the grant.") Since the principles set forth in *Prior* remain part of the law of Florida, *Prior* is binding upon this Court in its interpretation of Florida law. *See Hall v. Wainwright*, 493 F.2d 37, 39 (5th Cir. 1974).

Defendant contends that the U.S. Supreme Court's ruling in *Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), overruled *Prior*. In *Breard*, the U.S. Supreme Court upheld a similar

---

1. At trial, Plaintiff also stipulated that the other exemptions found in the Code do not apply to his activities. *See* J.O.C. § 250.301(a) (exempting certain charitable, religious, fraternal, youth, and civic organizations from the general prohibition on door-to-door peddling).

anti-peddling ordinance against federal due process, commerce clause, and First Amendment challenges. However, *Prior* is best viewed as having been decided on state constitutional grounds, *see Breard,* 341 U.S. at 628 n. 6, 71 S.Ct. at 925 n. 6; *Retail Credit,* 393 F.Supp. at 587 (S.D.Fla. 1975) (stating that *"Breard* did not overrule *Prior* since *Prior* was decided only on state law grounds...."), and thus was not overruled by *Breard.*

■ Plaintiff seems to contend that *Prior* stands for the broader proposition that door-to-door peddling is not a public nuisance under any circumstances. However, this Court reads *Prior* as holding only that door-to-door peddling may not be declared a public nuisance when in fact it is not. *See Prior,* 180 So. at 356 (stating that "It appears *from the evidence in this case* that the house to house solicitation of business, such as was engaged in *by this petitioner,* constitutes what has become an ordinary, usual and lawful method of doing business,....") (emphasis added). Thus, the facts of each case must be examined carefully to determine whether the type of door-to-door peddling engaged in by the parties in that case constitutes a public nuisance. *See Orlando Sports Stadium, Inc. v. State,* 262 So.2d 881, 884 (Fla.1972).

■ A public nuisance is defined as an activity that "violates public rights, subverts public order, decency or morals, or causes inconvenience or damage to the public generally." *See id.;* 38 Fla.Jur.2d, *Nuisances* § 5; *see also* Black's Law Dictionary 1107 (5th ed. 1979) (defining "public nuisance" as "a condition dangerous to health, offensive to community moral standards ... [or] behavior which unreasonably interferes with the health, safety, peace, comfort or convenience of the general community"). It is not completely clear under *Prior* which party bears the burden of proving that peddling is or is not a public nuisance. In *Prior,* the court noted that one method of allocating burdens of proof is to require the citizen to make a *prima facie* showing that the activity is not a public nuisance, thus shifting the burden to the government to prove that the activity is in fact a public nuisance. *See* 180 So. at 355. However, the *Prior* court did not decide the issue of burden of proof, as the court found that even if the citizen bore the burden of showing that the New Smyrna ordinance was unreasonable and that the activity was not a public nuisance, the citizen had carried that burden. *See id.*

### IV. Are Plaintiff's activities a public nuisance?

In this case, door-to-door peddling in Jacksonville, Florida has not been proved to be a public nuisance. The Defendants have introduced virtually no evidence that proves peddling in Jacksonville by Y.O.U. or by others is a public nuisance, and have made little attempt to make such a showing. Instead of introducing evidence, the Defendants seek to prove their case through a motion requesting this Court to take judicial notice of the following "facts": (1) uninvited door-to-door solicitation of private residences in Jacksonville generally causes inconvenience to the occupants; (2) life in 1938 New Smyrna Beach is distinguishable from life in 1991 Jacksonville in that uninvited door-to-door solicitors of private residences generally cause inconvenience to the occupants; and, (3) the City's ordinance reduces the number of uninvited visits by solicitors to private residences.

■ This Court will not accept the Defendants' implied invitation to, in essence, take judicial notice of the validity of the ordinance under attack. The first "fact" listed by the Defendant is not generally known within this Court's territorial jurisdiction, and evidences an attempt by the Defendants to avoid the task of affirmatively proving that Y.O.U.'s activities are a public nuisance. Indeed, the Defendants called only one nonhostile witness, Mr. Dennis Lemire, an investigator with the Jacksonville Department of Consumer Affairs. One of Mr. Lemire's duties is to handle consumer complaints about door-to-door solicitation. Mr. Lemire did not, however, state how many complaints received by his office are attributable to Y.O.U.'s sales activities. In short, Mr. Lemire's tes-

timony did not establish that Y.O.U.'s activities cause the general public inconvenience of a scope amounting to a public nuisance, although he did testify that he personally considers door-to-door salespeople an inconvenience.

As for the Defendants' second "fact", while it is undoubtedly true that present-day Jacksonville differs markedly from 1938 New Smyrna, it does not follow that Y.O.U.'s door-to-door solicitation generally causes inconvenience to residents of Jacksonville. The third "fact" likewise is irrelevant to the issue of whether Y.O.U.'s activities are a public nuisance. Accordingly, Defendants' motion to take judicial notice shall be denied.

■ Even assuming that Plaintiff bears the burden of proving that door-to-door peddling in Jacksonville by Y.O.U. is not a public nuisance, the Court finds that Plaintiff has met this burden. The evidence introduced at trial showed that Y.O.U. sold 90,000 items in Jacksonville in 1990, an average of roughly one item per residence solicited. The evidence showed that a sizeable number, approximately one-half, of the residences solicited made a purchase from Y.O.U. Thus, thousands of customers in Jacksonville evidently did not find Plaintiff's organization materially annoying to them personally, which demonstrates that Y.O.U.'s activities do not materially inconvenience the public at large or subvert public order. Also, the Y.O.U. sales force has received only a minor amount of negative responses (for example, occupants slamming doors in the salesperson's face) in comparison to the number of positive responses from Y.O.U. customers. Thus, Plaintiff has affirmatively proved, in the absence of any effective rebuttal evidence by the Defendants, that Y.O.U.'s activities do not inconvenience the public in a manner that amounts to a public nuisance. Accordingly, under the authority of *Prior v. White*, the ordinance is unreasonable and an invalid exercise of the police power as applied to the Plaintiff and the Y.O.U. organization.

Defendants contend that *Prior* is no longer applicable because it was decided prior to the adoption of the 1968 Florida Constitution and was based on a recognition of limited municipal power. The Court finds this contention a *non sequitur*. Under the 1885 Constitution in effect at the time of *Prior*, municipalities could exercise only those powers which were expressly granted; under the current Constitution, "municipalities have governmental, corporate and proprietary powers unless otherwise *limited* by law." *City of Boca Raton v. Gidman*, 440 So.2d 1277, 1280 (Fla.1983). Defendants are unquestionably correct that municipal powers have expanded since the adoption of the present Constitution. However, the *Prior* court invalidated New Smyrna's anti-peddling law because peddling was not proved to be a public nuisance in fact. Contrary to Defendants' argument, the New Smyrna ordinance was not struck down because the city lacked the power to pass the ordinance; a Florida state law in effect at the time clearly and expressly granted the city the power "to abate nuisances". *See Prior*, 180 So. at 354 (quoting Chapter 10,941, Laws of Florida, Sp.Acts of 1925, § 7).

Defendants cite *Valdez v. State*, 142 Fla. 123, 194 So. 388, 391 (1940), for the proposition that the state or a municipality can declare certain activity a public nuisance that was not regarded a public nuisance at common law. However, *Valdez* also recognized that the prohibited conduct must in fact constitute a public nuisance, affecting "the public generally". *See id.; see also Orlando Sports Stadium*, 262 So.2d at 884. While *Valdez* did recognize the legislature's broad power to declare a public nuisance, it also stated unequivocally that not every statute enacted for the preservation of the public health and safety "is to be accepted as a legitimate exertion of the police power of the State." *Id.* In addition, *Prior* was decided on state constitutional grounds, not on common law grounds. *See Prior*, 180 So. at 357 (holding that "the ordinance is unreasonable and invades the petitioner's constitutional rights.") Defendants cannot, and do not, argue that a municipality can change the state constitution by local ordinance. Until the interpretation of the police power set

forth in *Prior* is overruled by the courts of Florida, the City of Jacksonville cannot pass a law which operates to the contrary.

## V. Conclusion

The scope of the ruling in this case is narrow. This Court holds that, as applied to the Plaintiff and his organization, Youth Opportunities Unlimited, J.O.C. § 250.303 is an invalid exercise of the police power as a matter of Florida law. Because this Court has ruled that the ordinance at issue is invalid as applied under Florida law, it is unnecessary to reach the other issues in this case, including the several federal constitutional challenges to the ordinance. Accordingly, it is now

ORDERED AND ADJUDGED:

1. Defendants' motion to take judicial notice, filed March 11, 1991, is denied.

2. Defendants are permanently enjoined from arresting or prosecuting Plaintiff or any members of Youth Opportunities Unlimited under color of Jacksonville Ordinance Code § 250.303.

DONE AND ORDERED.